CHASE THEATRES, INC. *vs.* PARAMOUNT PICTURES
CORPORATION.

No. 86-1382.

Suffolk.   November 6, 1987. — March 18, 1988.

Present: GRANT, KASS, & SMITH, JJ.

*Practice, Civil,* Summary judgment. *Motion Picture. Fraud. Contract,*
Bidding for contract. *Consumer Protection Act,* Unfair act or practice.

On a misrepresentation claim by an exhibitor against a motion picture dis-
tributor arising from the defendant's failure to accept the plaintiff's bid
for exhibition rights to a certain motion picture, the judge correctly
ordered summary judgment for the defendant where the materials before
him, although tending to establish that the plaintiff's theater facilities
were superior to those of the successful bidder, raised no genuine issue
of material fact, inasmuch as G. L. c. 93F, a statute regulating business
relations between motion picture distributors and exhibitors, does not
require that a distributor accept the most favorable bid and where,
moreover, the defendant's solicitation of bids had not represented that
it would grant exhibition rights to a bidder meeting or exceeding the
terms stated therein. [475-478]
On a claim under G. L. c. 93A, the Consumer Protection Act, by an exhibitor
against a motion picture distributor arising from the defendant's failure
to accept the plaintiff's bid for exhibition rights to a certain motion
picture, summary judgment was appropriately ordered for the defendant.
[478]


CIVIL ACTION commenced in the Boston Municipal Court
Department on September 9, 1981.

On removal to the Superior Court Department the case was
heard by *John Paul Sullivan,* J., on a motion for summary
judgment.

*Robert J. Rutecki (Sanford I. Furman* with him) for the
plaintiff.

*Craig A. MacDonnell (Charles R. Parrott* with him) for the
defendant.

SMITH, J. Chase Theatres, Inc. (Chase), an exhibitor of motion pictures, brought an action against Paramount Pictures (Paramount), a motion picture distributor, as a result of Paramount's decision to accept a bid by Acton Cinema (Acton), a competitor of Chase, for a license to exhibit the motion picture "Raiders of the Lost Ark." Chase's complaint alleged violations of G. L. c. 93A and common law deceit. Paramount denied the allegations and filed a motion for summary judgment, claiming that there was no genuine issue of material fact. Chase responded with a similar motion. It claimed that it was entitled to a judgment as matter of law because Paramount had violated G. L. c. 93F, as inserted by St. 1979, c. 630, § 1, which regulates business practices between motion picture distributors and exhibitors. Chase contended that G. L. c. 93F requires distributors, when soliciting bids from exhibitors, to inform prospective bidders of the factors on the basis of which it will evaluate the bids and also to accept only the best bid, given those factors. Chase claimed that Paramount did not comply with those requirements. It also contended, in the alternative, that summary judgment should not be allowed in favor of Paramount because there existed genuine issues of material fact.

After a hearing, a Superior Court judge ruled that Paramount had not violated G. L. c. 93F and that no genuine issue of material fact existed. He allowed Paramount's motion for summary judgment and denied Chase's motion. Chase has appealed.

A "motion for summary judgment is in order and [the judgment sought] 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 553 (1976), quoting from Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). To overturn the motion judge, the opposing party "must have established by sworn statements some dispute of material fact, or must demonstrate some error of law . . . ." *Federal Deposit Ins. Corp.* v. *Csongor*, 391 Mass. 737, 740 (1984).

Both parties submitted affidavits and other material to the judge in support of their respective motions. From that material, we summarize the following undisputed facts. Chase and Acton were located in the same geographic and demographic area. Chase operated one theater located in a mall on route 2A in Littleton. Its theater had two screens, Cinema I and Cinema II; each accommodated 190 patrons. Acton was also located in a mall on route 2A near Chase's theater. It had four screens known as Cinemas 1, 2, 3, 4. Cinemas 1 and 4 had 175 seats; Cinemas 2 and 3 each had 177 seats. Chase and Acton had comparable ticket prices and advertised in the same newspapers. They also showed the same types of films.

Paramount's letter soliciting bids for the license to show "Raiders of the Lost Ark" indicated that (a) it was soliciting bids for an exclusive run for a minimum of four weeks, (b) it was soliciting bids from Chase, Acton, and a theater in Maynard, (c) bids were due at Paramount's offices by May 20, 1981, at 12:00 noon, and (d) bids were to be opened at that place and time. The bids that Paramount received from Chase and Acton were identical, except that Chase offered a $6,000 guarantee.

Chase contends that its bid was better than Acton's in all respects, including the question of which theater had the higher grossing potential. In that regard, Chase claims that the judge erred in allowing summary judgment in favor of Paramount because there existed genuine issues of material fact, namely, whether Chase or Acton had more seats, and whether Chase had outgrossed Acton on previous occasions when their theaters had exhibited the same film. Paramount argues that those facts are not "material" because G. L. c. 93F does not require a movie distributor to license a film to the best bidder.

An interpretation of c. 93F is necessary. That statute, enacted in 1979, prohibits "blind bidding."[1] It also established proce-

---

[1] Blind bidding is a practice whereby motion picture distributors require exhibitors to negotiate or bid for a license to exhibit a motion picture without first providing them the opportunity to view the film. See G. L. c. 93F, § 1, for a definition of "blind bidding." General Laws c. 93F, § 2, prohibits the practice.

Chase does not claim that Paramount engaged in blind bidding.

dures which distributors are required to follow when they invite bids from exhibitors for licenses to show a particular film. See c. 93F, § 3, set out in the margin.[2] Any violation of c. 93F constitutes an unfair act as defined by c. 93A, § 2. See c. 93F, § 4.

Although c. 93F does impose certain requirements on distributors to inform exhibitors about the bidding process, it does not require distributors to inform prospective bidders of every factor to be considered in evaluating bids or that distributors must accept the best bid. Moreover, the plain meaning of c. 93F, § 3(4), indicates the Legislature did not intend to impose any such requirement. See *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 704 (1984). That section provides that "[o]nce bids are solicited, the distributor shall license the picture only by bidding and may negotiate if he does not accept any of the original bids." Clearly, if a distributor has the right to reject "any of the original bids," he is not required to accept what a disgruntled exhibitor might regard as the best bid. Contrast that section with the public works construction statutes (G. L. c. 30, § 39M, and G. L. c. 149, § 44A), which specify that contracts are to be awarded to the "lowest responsible and eligible bidder."

---

[2] General Laws c. 93F, § 3, provides:

"If bids are solicited from exhibitors for the licensing of a motion picture within the commonwealth then:—

1. The invitation to bid shall specify (*a*) the number and length of runs for which the bid is being solicited, whether it is a first, second or subsequent run, and the geographic area for each run; (*b*) the names of all exhibitors who are being solicited; (*c*) the date and hour the invitation to bid expires; and (*d*) the location, including the address, where the bids will be opened, which shall be within the commonwealth.

2. All bids shall be submitted in writing and shall be opened at the same time and in the presence of exhibitors, or their agents, who submitted bids and are present at such time.

3. After being opened, bids shall be subject to examination by exhibitors, or their agents, who submitted bids. Within seven business days after a bid is accepted, the distributor shall notify in writing each exhibitor who submitted a bid of the terms of the accepted bid and the name of the winning bidder.

4. Once bids are solicited, the distributor shall license the picture only by bidding and may negotiate if he does not accept any of the original bids."

As to its count in the complaint that alleged deceit, Chase claims that Paramount knowingly misrepresented that the license to exhibit the film would be awarded on the basis of the bids and then awarded the license based on criteria other than those which appeared on the face of the invitation to bid. Chase, however, has not pointed to any fact that supports its claim. Paramount's letter to prospective bidders complied with c. 93F and contained no misrepresentation of any material fact. Nothing in that letter, under any reasonable interpretation, represented or promised that Paramount would license the film to a bidder meeting or exceeding the terms suggested therein.

Chase consistently misunderstands the nature of Paramount's letter to the prospective bidders. It was merely an invitation to bid, as that term is defined by c. 93F, § 1 (an "invitation to bid" means "a written solicitation or invitation by a distributor to one or more exhibitors to bid for the right to exhibit a motion picture"). Such requests for bids, even if they indicate proposed terms, are considered to be nothing more than nonbinding invitations for offers. *Weinstein* v. *Green*, 347 Mass. 580, 582 (1964). *Cannavino & Shea, Inc.* v. *Water Works Supply Corp.*, 361 Mass. 363, 366 (1972). It was unreasonable, therefore, for Chase to interpret Paramount's letter as making a promise or a representation. In fact, the materials submitted to the judge on Paramount's motion for summary judgment demonstrate that Chase considered Paramount's letter to be an invitation to submit an offer. It is clear that the motion judge did not err when he allowed Paramount's motion for summary judgment on Chase's deceit count.

Finally, Chase's theory that Paramount violated G. L. c. 93A is totally without merit. There is nothing in Paramount's conduct which is (1) "within . . . the penumbra of some common-law, statutory, or other established concept of unfairness; [or] (2) . . . immoral, unethical, oppressive, or unscrupulous." *PMP Associates, Inc.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975). *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 503-504 (1979).

*Judgment affirmed.*