NEW ENGLAND INSULATION COMPANY *vs.* GENERAL
DYNAMICS CORPORATION & others.[1]

No. 87-296.

Norfolk. February 16, 1988. — May 11, 1988.

Present: BROWN, KAPLAN, & DREBEN, JJ.

*Practice, Civil,* Complaint. *Contract,* Bidding for contract. *Deceit.*

Discussion of theories of liability with respect to bidding procedures applicable to contracting by governmental entities as analogous to theories which might be applicable to bid solicitations in a private commercial context. [29-33]

A judge incorrectly granted the defendant's motion to dismiss a civil action under Mass.R.Civ.P. 12(b)(6) where it appeared from the factual allegations in the complaint that the plaintiff might be entitled to some form of relief for damages caused by the corporate defendant's solicitation of the plaintiff's bid on insulation contracts in an allegedly sham bidding procedure, under which the plaintiff had no reasonable prospect of being awarded any contracts. [33-34]

CIVIL ACTION commenced in the Superior Court Department on November 26, 1985.

A motion to dismiss was heard by *Vincent F. Leahy*, J., and judgment was ordered by *Ernest S. Hayeck*, J., each sitting under statutory authority.

*William B. Golden* for the plaintiff.

*Janis M. Berry (John M. Harrington, Jr.,* with her) for General Dynamics Corporation.

DREBEN, J. The plaintiff appeals from the dismissal of its action as against General Dynamics Corporation (General Dynamics) under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754

---

[1] Panagiotis Takis Veliotis and James H. Gilliland, former officers of General Dynamics Corporation, and George Davis and Gerald E. Lee, former officers of Frigitemp Corporation.

(1974).[2] We reverse in view of the generous reading which must be accorded to a complaint in passing on a motion to dismiss.

In numerous counts asserting various legal theories, including a count under G. L. c. 93A, the plaintiff's allegations include: that General Dynamics invited the plaintiff to submit bids for the insulation of spherical tanks ("spheres") to hold liquified natural gas at sub-zero temperatures and for insulation of the holds of marine tanker vessels which would contain the spheres; that in its solicitations General Dynamics made representations that submissions would be retained in a locked file and would only be opened after the bid closing dates; that the plaintiff made its bids relying on these representations; that, contrary to published representations, prior to the bid closing dates, officers of General Dynamics (two of the individual defendants) made available to Frigitemp Corporation (Frigitemp) the previous bids submitted by the plaintiff; that such officers provided Frigitemp with the benefit of the plaintiff's confidential engineering and design work; that General Dynamics knew or should have known that its officers were engaged in a "kickback" scheme with officers (the other individual defendants) of Frigitemp so that Frigitemp would and did obtain the contracts; that General Dynamics authorized or permitted additional bids to be solicited from the plaintiff at a time when it knew or should have known that the contracts in question had been or would be awarded to Frigitemp without consideration of the price or the qualifications of the bidders; and that General Dynamics intended to induce the plaintiff to participate in a sham bidding procedure under which the plaintiff had no reasonable prospect of being awarded any contracts. The plaintiff sought damages including lost profits.

Under Mass.R.Civ.P. 12(b)(6), "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

[2] The judge entered final judgment in favor of General Dynamics, making the requisite determination under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).

his claim." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting from *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). "Furthermore, the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true." *Ibid*. Nor should a complaint be dismissed because it asserts a new theory of liability, *Capazzoli* v. *Holzwasser*, 397 Mass. 158, 165 (1986, Abrams, J., concurring); *Jenkins* v. *Jenkins*, 15 Mass. App. Ct. 934 (1983), because "it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions." 5 Wright & Miller, Federal Practice and Procedure § 1357, at 603 (1969 & Supp. 1987). *Shull* v. *Pilot Life Ins. Co.*, 313 F.2d 445, 447 (5th Cir. 1963).

General Dynamics challenges both the legal theories and the factual sufficiency of the complaint. We need not focus in detail on the relief sought by the plaintiff or its theories because "a complaint is sufficient against a motion to dismiss if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate." *Nader* v. *Citron*, 372 Mass. at 104.

General Dynamics quite rightly asserts that "[r]equests for bids are usually nonbinding invitations for offers," *Weinstein* v. *Green*, 347 Mass. 580, 582 (1964); *Chase Theaters, Inc.* v. *Paramount Pictures Corp.*, 25 Mass. App. Ct. 474, 478 (1988), and that it retained discretion to choose the insulation company with which it would contract. It was not bound to accept the plaintiff's bid, or indeed any bid. *Cronin* v. *National Shawmut Bank*, 306 Mass. 202, 210 (1940). It does not necessarily follow, however, that General Dynamics could not limit its freedom to act by making representations in its invitations to bid which it knew or should have known would be reasonably relied upon by the plaintiff.

Where the bid solicitor is a governmental entity, numerous cases impose liability on an implied contract theory. In the public contracting domain, an invitation to bid upon certain conditions followed by the submission of a bid on those conditions creates an implied contract obligating the bid solicitor to

those conditions. Thus, for example, in *Heyer Prod. Co.* v. *United States*, 140 F. Supp. 409, 413 (Ct. Cl. 1956), the court pointed out that the contracting authority

> "knew it would involve considerable expense. . . . to comply with the invitation, and so, when it invited plaintiff to incur this expense, it must necessarily be implied that it promised to give fair and impartial consideration to its bid . . . . If . . . the [contracting authorities] knew from the beginning they were going to give [a certain company] the contract [and] [t]he advertisement for bids was a sham, . . . they practiced a fraud on plaintiff and on all other innocent bidders. They induced them to spend their money to prepare their bids on the false representation that their bids would be honestly considered. This implied contract has been broken and [the] plaintiff may maintain an action for damages for its breach."

The court allowed recovery of bid preparation costs.

We reached the same result in *Paul Sardella Constr. Co.* v. *Braintree Housing Authy.*, 3 Mass. App. Ct. 326, 333 (1975), *S.C.*, 371 Mass. 235 (1976). See also *Armstrong & Armstrong, Inc.* v. *United States*, 514 F.2d 402, 403 (9th Cir. 1975); *Merriam* v. *Kunzig*, 476 F.2d 1233, 1242 & n.7 (3d Cir.), cert. denied, 414 U.S. 911 (1973).

We recognize that in public bidding cases the bidding process is governed by statute and that the legislative objectives of obtaining the lowest prices and establishing an honest and open procedure for competition for public contracts, see *Interstate Engr. Corp.* v. *Fitchburg*, 367 Mass. 751, 758 (1975), are furthered by allowing the award of reasonable bid preparation costs for "the failure to give fair consideration to a bidder in accordance with the statutory procedure." *Sardella*, 3 Mass. App. Ct. at 334. To the extent that the decisions are based on an implied contract or on promissory estoppel,[3] however, those

---

[3] See, e.g., *Owen of Ga., Inc.* v. *Shelby County*, 648 F.2d 1084, 1095-1096 (6th Cir. 1981); *Swinerton & Walberg Co.* v. *Inglewood-Los Angeles*

bases for recovery may be equally applicable to private solicitations for bids. But see *Roblin Hope Indus., Inc.* v. *J.A. Sullivan Corp.*, 6 Mass. App. Ct. 481, 490 (1978) (theory of an implied contract in connection with the invitation to bid by a private contractor does not apply). There is surely no policy which would be served by allowing solicitors of bids in the private sector to ignore the conditions they themselves set and ask others to rely upon.

Assuming, without deciding, that a promise to give fair and impartial consideration to all bids cannot be implied, that does not mean that, as matter of law, a promise not to divulge engineering and design work is not binding. Indeed, in *McNeil* v. *Boston Chamber of Commerce*, 154 Mass. 277, 279-281 (1891), the defendants, private solicitors of bids, were held bound by the terms of their notice as modified by an oral agreement with the bidders. Although the holding related to the condition requiring the defendants to accept the low bid from the invited bidders, the discussion suggests that the agreed upon terms, e.g., the opening of bids in the presence of all bidders, were also binding on the solicitor of bids. See also *Schwartz* v. *Capital Sav. & Loan Co.*, 56 Ohio App. 2d 83, 86-87 (1978), where, under an Ohio statute imposing an obligation of good faith, a prospective bidder at a sham auction had a right to rely upon the published notice of auction as being made in good faith. See also Cushman, Carter & Silverman, Construction Litigation: Representing the Contractor § 2.27, at 50 (1986) (when a private party solicits bids and "rejects the low bidder, or all bids, in bad faith or in furtherance of a scheme to obtain estimates from the bidders at no cost, the disappointed bidder may recover bidding expenses"). See generally Restatement (Second) of Contracts § 28 comments c

---

*County Civic Center Authy.*, 40 Cal. App. 3d 98, 103-105 (1974); *Telephone Associates, Inc.* v. *St. Louis County Bd.*, 364 N.W.2d 378, 382-383 (Minn. 1985). See also *Santoni* v. *Federal Deposit Ins. Corp.*, 677 F.2d 174, 178-179 (1st Cir. 1982) (promissory estoppel not applied because promise too indefinite; FDIC was acting in its corporate capacity where its contract liability was to be determined as that of a *private party*). See, in another bidding context in the private sector, *Drennan* v. *Star Paving Co.*, 51 Cal. 2d 409 (1958).

and d & illustration 5; 1 Williston, Contracts §§ 30 and 31 (3d ed. 1957); 1 Corbin, Contracts § 108 (1963).

The complaint also alleges misrepresentation. The misrepresentation cases involving bidding also arise primarily in the public sector, but there seems to be no reason in principle why they should not apply to private contractors. In fact, a number of cases which hold the governmental entity immune from tort liability point out that private persons might be held liable for the same actions. See, e.g., *Santoni* v. *Federal Deposit Ins. Corp.* 677 F.2d 174, 179 (1st Cir. 1982); *Universal By-Products, Inc.* v. *Modesto*, 43 Cal. App. 3d 145, 153-155 (1974); *Pacific Architects Collaborative* v. *California*, 100 Cal. App. 3d 110, 122 n.3 (1979).

In view of the foregoing authorities we think the allegations in the complaint suffice to warrant analysis of the actual facts to see if the plaintiff may recover under the theories discussed or perhaps under the broader aegis of c. 93A.[4]

General Dynamics also challenges the factual sufficiency of the complaint. It argues that the plaintiff's January 9, 1973, bid for the "spheres" insulation contract cannot be considered because it was superseded by a later solicitation dated January 8, 1975. The 1973 bid, however, was by its terms to remain open until June 21, 1975, and, contrary to General Dynamics's suggestion, there is nothing in the complaint to indicate that the later solicitation served as a rejection of bids submitted in response to earlier solicitations, see *Park Constr. Co.* v. *Boston*, 353 Mass. 720, 720-721 (1968), or that the later solicitation involved a change in specifications making the plaintiff's January 9, 1973, bid on the spheres insulation contract obsolete.[5]

Another contention of General Dynamics is that the fraud of Veliotis and Gilliland was outside the scope of their employment. Whether this is so vis-à-vis the plaintiff is not a question

---

[4] We do not mean to imply that there must be a trial. It is possible that the matter can be resolved on motion for summary judgment.

[5] This argument can more appropriately be made by General Dynamics on a motion for summary judgment, supported by affidavit.

which can be determined as matter of law on the basis of the complaint. Cf. *Makino U.S.A., Inc.* v. *Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 312-313 (1988). General Dynamics also urges that the fraud of Veliotis and Gilliland unfolded subsequent to the plaintiff's bid on January 9, 1973, and therefore that bid could not have been induced by fraud. The complaint, however, involves not only the "spheres" bid (which was in any event made after Veliotis and Gilliland appeared on the scene, albeit by only a few days) but also bids for insulation of the holds. There is an explicit allegation that kickbacks were received by Veliotis and Gilliland between September, 1974, and May, 1976, "at a time when [the plaintiff] was actively bidding against Frigitemp for the . . . insulation contracts and was, in fact, proposing to provide substantially the same labor and materials at a lower contract price."

In sum, General Dynamics's challenge to the complaint fails. Because of the breadth of the allegations and the passage of time since the events in question, the judge may find it advisable to provide for controlled discovery. See Fed.R.Civ.P. 26(f). The judgment dismissing the complaint against General Dynamics is reversed, and the matter is remanded for further proceedings consistent with this opinion.

*So ordered.*