Burnes, J.
The City of Brockton (the “City” or “Brockton”) has developed a plan to rehabilitate one junior high school, and build three new schools (one junior high school and two elementary schools). The City is requiring, as part of their bidding process, that all successful bidders bind themselves to a Project Labor Agreement (“PLA”). In response to this requirement, Enterprise Equipment Co., Inc. (“Enterprise”), Levangie Electric Co., Inc. (“Levangie”), and Annese Electrical Services, Inc. (“Annese”) filed suit claiming that the City’s use of the PLA violates the Massachusetts’ competitive bidding laws, G.L.c. 149, §§44A-E, 44G-H, as interpreted by Callahan v. City of Malden, 430 Mass. 124 (1999). For the following reasons, this court ALLOWS the plaintiffs’ request for an injunction as set forth in the order of the court.
BACKGROUND
The City’s public school improvement plan includes abatement of asbestos and mechanical and electrical upgrades of the South Junior High School; the creation of a new junior high school; and the creation of two new elementary schools. The City hired URS Construction Services (“URS”) to manage the execution of these projects. URS, as a service to the City, undertook analysis of the four projects and concluded that they were of sufficient size, duration and complexity so as to warrant the use of a project labor agreement (“PLA”). Consequently, the City required all successful bidders to sign and bind themselves to the PLA.
The only project in the process of being bid now is the South Junior High School project. The three proposed new schools are not being bid now. The design for these schools is not even complete.
DISCUSSION[2]
In order to prevail on a request for a preliminary injunction, the moving party bears the burden of proving: that it is likely to succeed on the merits of the case; that it will suffer irreparable harm if the injunction is not granted; that the anticipated harm to the moving party outweighs any harm that will be had by the nonmoving party if the injunction is issued, GTE Products Corp. v. Stewart, 414 Mass. 721, 722-32 (1993), Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980) (hereinafter “Packaging Indus.”); and that granting the injunction will not adversely affect the public interest, Biotti v. Board of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988).
I. Likelihood of Success on the Merits
Project Labor Agreements are presumptively anti-competitive and consequently prohibited from use on most public construction projects. See Callahan, 430 Mass. at 131-32. This does not mean that there are no circumstances in which a project could justifiably utilize a PLA. Id. In Callahan, the Supreme Judicial Court illuminated the very specific circumstances in which a PLA could be used without violating Massachusetts’ competitive bidding laws, G.L.c. 149, §§44A-44E, 44G-44H. The awarding entity bears the burden of proving that the use of the PLA advances the goals of the competitive bidding statute and “pro-mot[es] labor harmony.”[3] Callahan, 430 Mass. at 131-33. Moreover, the awarding authority must be able to show that prior to deciding to use the PLA, it engaged in a “careful, reasoned process to determine” whether the goals of the competitive bidding statute are met by utilizing the PLA. Id. at 132-33. The project requiring adoption of the PLA must be “of sufficient size, duration, timing, and complexity.” Id. at 132-33. These *329 factors are not to be considered in isolation, and the relationship between the projects must be that of a “carefully choreographed dance.” Id. at 133.
In Callahan, the City of Malden (“Malden”) required all successful bidders on its’ public schools building project to sign a project labor agreement. Callahan, 430 Mass. at 127. Multiple nonunionized contractors sued Malden, claiming that the use of the project labor agreement violated the Commonwealth’s competitive bidding statute, and requesting an injunction. Id. at 128. The Supreme Judicial Court, in affirming the Superior Court’s denial of injunctive relief, held, in part, that because Malden had demonstrated the dependent relationship between the school development projects, they were part of a “carefully choreographed dance” which justified the use of the PIA. Id. at 133-36. In Callahan, the development project involved demolition of public schools, and development of the new schools on the same site. Id. at 133-34. This required a well coordinated schedule to insure that at any given time, there was a place for all of the public school students to go. Id. at 133-34. As the court specifically noted,
[t]he two schools at issue in this case are part of a comprehensive, $100 million, five-year program to close nine existing schools, to demolish three of them, and to build five new schools . . . [E]ven a slight delay would have severe consequences because the project “encompasses demolition of existing schools that are currently being utilized, replacement of the demolished schools with new school buildings, coordination of construction/demolition activities at multiple sites and adoption and maintenance of an interdependent phasing of construction milestones and school openings and closings.” Approximately 4,000 students, their classrooms, and their teachers will be relocated, over a number of years, in what of necessity must be a carefully synchronized fashion.
Callahan, 430 Mass. at 133-34.
In Callahan, the sheer size and interdependence of the construction projects established the utility of making successful bidders be bound by the PLA. Id. at 133-36.
In this case, there has been no demonstration of the interrelationship of the South Junior High School abatement, electrical and mechanical rehabilitation project with the development of the three new schools. There was no mention of the interrelationship of the four projects at the hearing on this motion, nor was their any argument whatsoever in the City’s supplemental opposition, despite this court’s request for such factual information. This lack of demonstration of a “carefully choreographed dance” is fatal. The City has failed to meet their burden of proving the necessity of the PLA requirement. Consequently, the plaintiffs have showed a likelihood of success on the merits of their case.
II.Irreparable Harm
Irreparable harm exists where the potential loss to the party seeking the injunction could not be remedied after a full trial on the merits. Packaging Indus., 380 Mass. at 616. It is clear that the plaintiff contractors in this matter would lose their opportunity to bid for the City’s rehabilitation of South Junior High School if the injunction were not granted. This harm could not be remedied if the bidding process were permitted to go forward and the job was awarded to one of the other bidders. Additionally, money damages will not make the plaintiffs whole, because they would only be entitled to the costs of preparing the bid, not the amount they would have made had the contract been awarded to them. See New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28, 31 (1988) (recognizing that an unsuccessful bidder can recover costs for the preparation of the bid where bidding process was unfair).
III.Balance of the Harms
After determining the existence of irreparable harm to the moving party, the court must then balance this harm against the harm the nonmoving party would endure should the injunction issue. Packaging Indus., 380 Mass. at 617. What is of importance is not the relative proportion of harms that each party would endure, but rather who has the greater risk of harm given each party’s likelihood of success on the merits. Id. In the Callahan case, the manager for the construction projects gave a well supported statement of the impact even a minor delay would have on the project. Callahan, 430 Mass. at 134, n.12. The manager explained that if the first three schools were unable to open on time because of a new bidding process, that the inadequate schools could not be demolished on schedule as they would need to remain in use; this would result in an entire academic year delay in the opening of the new schools. Id.
If the plaintiffs do in fact succeed on the merits of the case, as, in this court’s opinion, is likely, their risk of harm outweighs that of the City of Brockton. If the bidding process were to go forward, a bid could be chosen and the rehabilitation plan executed. Once the work on South Junior High School is completed, there is certainly no way for this court to remedy the plaintiffs’ harm of losing the opportuniiy to bid and potentially conduct the work on this project. Moreover, the City offered no facts demonstrating that they would be harmed by a delay in the bidding process. Compare Callahan, 430 Mass. at 134, n. 12. This court finds that there is a much greater risk of harm to the plaintiffs.
IV.Public Interest
In certain cases, where the public interest is likely to be affected, the court must consider whether the granting of the injunction would further the public interest or cause it harm. LeClair v. Town of Norwell, *330 430 Mass. 328, 337 (1999) (citations omitted). “Moreover, where a statutoiy violation is alleged, the judge should specifically consider how the statutory violation affects the public interest.” LeClair, 430 Mass. at 332, citing Commonwealth v. Mass. CRINC, 392 Mass. 79, 89-90 (1984). As project labor agreements are presumptively anti-competitive, see Callahan, 430 Mass. 132, and as the use of a PLA in the Brockton projects has not been demonstrated to be in furtherance of the Commonwealth's competitive bidding statutes, this court finds that the granting of a preliminary injunction is in the best interest of the public. See LeClair, 430 Mass. at 332; Mass. CRINC, 392 Mass. at 89-90.
CONCLUSION
For the foregoing reasons, this court will allow, in part, the plaintiffs’ request for a preliminary injunction per the ORDER of this court dated today.

The defendant attempts to argue that plaintiff Levangie lacks standing. This exact argument was explicitly rejected by the Supreme Judicial Court in Callahan, and therefore will not be entertained by this court. Callahan, 430 Mass. at 129.

The defendant argues that the burden is on the plaintiff to prove that the use of the PLA is anti-competitive before the burden shifts to the defendant. However the defendant cites no authority to support this proposition. Additionally, Callahan, explicitly notes that, “ [w]hen an awarding authority’s use of a PLA is challenged, the authority bears the burden of demonstrating that it adopted a PLA to further the purposes of the competitive bidding statute . . .” Callahan, 430 Mass. at 132 (emphasis added).