**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:   2012-NMCA-097

Filing Date: August 6, 2012

Docket No. 30,928

ORION TECHNICAL RESOURCES, LLC,

>  Plaintiff-Appellant,

v.

LOS ALAMOS NATIONAL SECURITY, LLC and
COMPA INDUSTRIES, INC.,

>  Defendant-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Beatrice J. Brickhouse, District Judge**

Freedman Boyd Hollander Goldberg Ives & Duncan, P.A.
David Freedman
David H. Urias
Albuquerque, NM

for Appellant

Carolyn Callaway, P.C.
Carolyn Callaway
Albuquerque, NM

Allegra A. Hanson, P.C.
Allegra A. Hanson
Albuquerque, NM

Miller Stratvert P.A.
Richard L. Alvidrez
Albuquerque, NM

for Appellee COMPA Industries, Inc.

Stelzner, Winter, Warburton, Flores, Sanchez & Dawes, P.A.

1

Luis G. Stelzner
Robert P. Warburton
Sara N. Sanchez

for Appellee Los Alamos National Security, LLC

**OPINION**

**VANZI, Judge.**

**{1}**     Plaintiff Orion Technical Resources, LLC (Orion) appeals from the district court's order dismissing its claim for breach of implied contract against Defendant Los Alamos National Security, LLC (LANS) and for denying its motion for injunctive relief against LANS and Defendant COMPA Industries, Inc. (COMPA) (collectively, Defendants).  We address two issues on appeal: (1) whether an implied-in-fact contract can ever exist between a disappointed bidder and the solicitor of bids in the private procurement process and (2) whether the district court erred when it concluded as a matter of law that injunctive relief is never available to a disappointed bidder.  Here, Orion filed a complaint alleging that there was an implied-in-fact contract between it and LANS that arose within the context of LANS's solicitation for bids.  Specifically, Orion alleged that the implied-in-fact contract required LANS to follow certain procedures in evaluating the proposals of the prospective bidders and selecting the winner of the subcontract.  We first hold that a disappointed bidder is not barred as a matter of law from bringing a claim based on an implied-in-fact contract in the context of the private solicitation process, and we reverse the district court on that issue.  In addition, although we conclude that the district court properly denied Orion's request for injunctive relief, we reverse its decision that injunctive relief is never available to a disappointed bidder under any circumstances.  Finally, because we conclude that expectancy damages can be a possible remedy in this type of case, we reverse the district court's ruling that Orion's only available remedy is limited to reliance damages.

**BACKGROUND**

**{2}**     LANS is the management and operating contractor at the Los Alamos National Laboratory (LANL).  In 2007, LANS issued a request for proposals (RFP) for a subcontract to provide vendor management and staff augmentation services (service contract) to LANL.  Orion and COMPA were two of the three companies that submitted bids and were selected as finalists.  After providing their best and final offers, LANS awarded the contract to COMPA.

**{3}**     Shortly after COMPA executed the service contract with LANS, Orion filed a complaint for injunctive relief and damages claiming that LANS breached an implied-in-fact contract with Orion that arose out of the RFP bid selection process.  The twenty-three-page complaint set out detailed factual allegations regarding the process by which LANS solicited and selected bids for the service contract.  For example, it alleged that

[p]ursuant to LANS's [RFP], Source Selection Plan[,] and custom and norms for [management and operations] procurements, LANS was obligated to ensure that the bid selection process followed basic principles of fairness and competition. LANS violated its obligation to ORION to conduct a fair and competitive procurement process by failing to follow[] its own RFP, including the Source Selection Plan, its Procurement Policies and Procedures, and the well-established customs and norms for [management and operations] procurement bids.

The complaint also alleged that LANS assured bidders that the solicitation process would be fair, competitive, and negotiated; that LANS deviated from the selection process and criteria set out in its RFP and Source Selection plan by engaging in discussions with only one bidder and awarding the service contract to a bidder that did not meet the requirements of the RFP; and that LANS failed to follow "well-established customs and norms in procurement and acquisition practices that are necessary for a full, open and competitive process." In these ways, Orion claimed that LANS breached the alleged implied-in-fact contract that required LANS to give fair consideration to Orion and to strictly comply with the representations it made in its RFP and Source Selection Plan.

{4} Based on the allegations in the complaint, Orion filed a motion for preliminary injunction and an application for a temporary restraining order requesting that the district court restrain and permanently enjoin LANS and COMPA from proceeding with the performance of the service contract, order LANS to reimburse Orion for the cost of preparing the bid, award Orion other costs, damages, and attorney fees, and provide any other relief deemed appropriate. The district court initially granted Orion's application for a temporary restraining order and prohibited Defendants from continuing to process any transition-related documentation for current employees of Orion until Orion's motion for a preliminary injunction was heard. Thereafter, in a memorandum opinion and order dated June 29, 2009, the district court vacated the temporary restraining order and denied Orion's motion for a preliminary injunction. At this point, COMPA had already begun to transition to full operation on the service contract and expected to start full performance within days of the district court's order.

{5} In March 2010, LANS filed a motion for judgment on the pleadings for failure to state a claim under Rule 1-012(C) NMRA. LANS argued that Orion's claim for breach of implied-in-fact contract required dismissal because New Mexico does not recognize that cause of action in the private procurement context. LANS filed a separate motion for judgment on the pleadings on Orion's request for permanent injunctive relief, arguing that, because the service contract had already been awarded, an injunction would not remedy improper conduct but would only serve to punish LANS. COMPA filed a similar motion pursuant to Rule 1-056 NMRA and asked the district court to grant partial summary judgment to COMPA on Orion's request for injunctive relief. The district court granted both of LANS's Rule 1-012(C) motions and COMPA's Rule 1-056 motion. Orion timely appealed.

**DISCUSSION**

**{6}**     In this appeal, we first address whether an implied-in-fact contract may arise between parties in the private bid solicitation and selection process. Because we answer that question in the affirmative, we then discuss whether injunctive relief is ever available to a disappointed bidder if the solicitor of bids breaches such an implied-in-fact contract. Although we conclude that injunctive relief may be appropriate under certain circumstances, it is not available to Orion under this set of facts. However, the district court erred when it limited recovery to reliance damages incurred by a bidder based upon the preparation and submission of its bid.

**An Implied-In-Fact Contract May Exist in the Private Procurement Context**

**{7}**     Orion argues that the district court erred in finding that an implied-in-fact contract to follow certain procedures in evaluating and selecting bids can never exist between private companies in the bidding and procurement context. Here, the district court ruled that the only time an implied contract can be found in the procurement process is when a governmental entity is soliciting bids. The court reasoned that in the public procurement context, there are statutes governing the bid selection process that may give rise to an implied contract. Those statutes specifically provide that public entities will consider all bids fairly and equitably. Private solicitors of bids, on the other hand, are not bound by such statutes. Orion counters that even where no such statutes control, if a non-governmental solicitor of bids makes specific representations regarding the processes by which a contract will be awarded and a bidder reasonably relies on those representations in deciding to bid, an implied-in-fact contract can arise between the parties. For the reasons that follow, we agree with Orion.

**{8}**     Our review of a district court's grant of a motion for judgment on the pleadings is de novo. *Glaser v. LeBus*, 2012-NMSC-012, ¶ 8, 276 P.3d 959. "A motion to dismiss on the pleadings . . . is similar to a motion to dismiss for failure to state a claim upon which relief can be granted[.]" *Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 115 N.M. 293, 302, 850 P.2d 996, 1005 (1993). Where, as here, the district court considered matters contained solely within the pleadings, a judgment on the pleadings is treated as a motion to dismiss. *Glaser*, 2012-NMSC-012, ¶ 8; *see* Rule 1-012(B)(6). "[A] motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint." *Shovelin*, 115 N.M. at 302, 850 P.2d at 1005. "In reviewing a district court's decision to dismiss for failure to state a claim, we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." *Glaser*, 2012-NMSC-012, ¶ 8 (internal quotation marks and citation omitted). The motion "should be granted only when it appears that the plaintiff is not entitled to recover under any facts provable under the complaint." *Id.* (internal quotation marks and citation omitted). "[A] motion to dismiss for failure to state a claim is granted infrequently." *Shovelin*, 115 N.M. at 302, 850 P.2d at 1005 (internal quotation marks and citation omitted).

4

**{9}**     In its complaint, Orion alleges that there was an implied-in-fact contract between it and LANS. The distinction between an express and implied contract involves "no difference in legal effect, but lies merely in the mode of manifesting assent." Restatement (Second) of Contracts § 4 cmt. a (1981). Implied-in-fact contracts are "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred . . . from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996) (internal quotation marks and citation omitted); *see also* 1 Williston on Contracts § 1:5 (4th ed. 2012) ("[I]ntention to make a promise may be manifested in language or by implication from other circumstances, including the parties' course of dealing or course of performance, or a usage of trade."). An implied-in-fact contract is "based on the parties' mutual assent as manifested by their conduct." *Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 15 n.1, 121 N.M. 728, 918 P.2d 7 (internal quotation marks and citation omitted).

**{10}**     We have previously said that "[e]vidence of custom or course of conduct between the parties may give rise to a contract implied in fact." *Sanchez v. Martinez*, 99 N.M. 66, 70, 653 P.2d 897, 901 (Ct. App. 1982). Our courts will also look to "written representations[,] . . . oral representations, . . . the conduct of the parties, or . . . a combination of representations and conduct" to determine whether an implied-in-fact contract exists. *Garcia*, 1996-NMSC-029, ¶ 10 (internal quotation marks and citation omitted); *see Beggs v. City of Portales*, 2009-NMSC-023, ¶ 17, 146 N.M. 372, 210 P.3d 798; *Kestenbaum v. Pennzoil Co.*, 108 N.M. 20, 24, 766 P.2d 280, 284 (1988). Whether an implied-in-fact contract arises from the representations of the parties is dependent on whether the representations create a reasonable expectation of contractual rights. *Garcia*, 1996-NMSC-029, ¶ 11; *Ruegsegger v. Bd. of Regents of W. N.M. Univ.*, 2007-NMCA-030, ¶ 24, 141 N.M. 306, 154 P.3d 681. "The reasonableness of expectations is measured by just how definite, specific, or explicit . . . the representation or conduct relied upon" has been. *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 672, 857 P.2d 776, 783 (1993). Accordingly, our courts have recognized an action based on an implied-in-fact contract in a number of different contexts. For example, we have considered whether certain conduct and facts gave rise to an implied-in-fact employment contract sufficient to overcome the presumption of at-will employment. *See Garcia*, 1996-NMSC-029, ¶¶ 10-11; *Hartbarger*, 115 N.M. at 672, 857 P.2d at 783; *Kestenbaum*, 108 N.M. at 22-23, 766 P.2d at 282-83; *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 426-27, 773 P.2d 1231, 1233-34 (1989); *Lukoski v. Sandia Indian Mgmt. Co.*, 106 N.M. 664, 666-67, 748 P.2d 507, 509-10 (1988); *Sanchez v. The New Mexican*, 106 N.M. 76, 78, 738 P.2d 1321, 1324 (1987). This Court relied on the approach used in employment cases to determine whether a student successfully stated a claim for breach of an implied contract against a post-secondary educational institution based on the representations contained in a student handbook. *Ruegsegger*, 2007-NMCA-030, ¶¶ 22-24, 36. In other circumstances, ranging from an alleged promise to procure fire insurance, to a title company's failure to disperse escrow funds, to a dispute over whether an individual was hired by a company, our courts have considered claims based on implied-in-fact contracts. *See Gordon v. N.M. Title Co.*, 77 N.M. 217, 218, 421 P.2d 433, 433-34 (1966); *Roan v. D.*

*W. Falls, Inc.*, 72 N.M. 464, 466-67, 384 P.2d 896, 898 (1963); *Sanchez*, 99 N.M. at 68, 653 P.2d at 899.

**{11}**    Here, the parties disagree about whether an implied-in-fact contract can exist in the private bid solicitation and selection process. Their dispute centers on our Supreme Court's decision in *Planning & Design Solutions v. City of Santa Fe*, 118 N.M. 707, 714-15, 885 P.2d 628, 635-36 (1994), in which the Court held that by issuing an RFP, the city impliedly promised to abide by the governing statutes in evaluating the bids and therefore to consider all bids fairly and equitably. Agreeing with LANS's interpretation of *Planning & Design*, the district court found that the only time a disappointed bidder can have a viable claim based on an implied contract is when a governmental body solicited the bids. Orion contends that nothing in *Planning & Design* precludes a claim for breach of an implied-in-fact contract arising out of a private procurement process.

**{12}**    In *Planning & Design*, the city issued a RFP that listed four weighted criteria that the city would apply in evaluating the bids. *Id.* at 709, 885 P.2d at 630. Under the laws governing the public procurement process, the city was required to apply the criteria set out in the RFP—and no others—in evaluating the proposals. *Id.* at 711, 885 P.2d at 632. However, in selecting the winning bid, the city relied on a fifth criterion that was not included in the RFP. *Id.* The plaintiff, a disappointed bidder, sued the city for violations of the Procurement Code and the city's own purchasing regulations. *Id.* at 709, 885 P.2d at 630. The district court in that case ruled that because the disappointed bidder did not have a formal contract with the city, the city could not be liable for breach of contract. *Id.*

**{13}**    Our Supreme Court disagreed and concluded that although there was no formal contract between the parties, an implied contract could be found in the bid solicitation process. *Id.* at 714, 716, 885 P.2d at 635, 637. The Court recognized that, generally, "[a] request for bids 'is not an offer but a request for offers' and bidders are making offers when they submit bids." *Id.* at 714, 885 P.2d at 635 (quoting Restatement (Second) of Contracts § 28 cmt. c (1981)). Accordingly, no contract generally occurs until acceptance of a bid by the soliciting party. *Id.* However, because the Procurement Code required the city to treat all bids fairly and equitably and because other statutes required the city to consider only those criteria listed in its RFP, the Court reasoned that by issuing the RFP, the city had made an implied promise to abide by these statutory requirements. *Id.* at 713-14, 885 P.2d 634-35. The plaintiff had relied on the promise as a guarantee that any award would be based only on the criteria set out in the RFP and changed its position accordingly. *Id.* at 714-15, 885 P.2d at 635-36. Had the promise been different, the plaintiff might have chosen not to bid at all. *Id.* at 715, 885 P.2d at 636. The Court's conclusion was consistent with the rule in other jurisdictions that recognize that "it is an implied condition of every invitation for bids issued by a public contracting authority that each bid submitted pursuant to the invitation will be fairly considered in accordance with all applicable statutes." *Paul Sardella Constr. Co. v. Braintree Hous. Auth.*, 329 N.E.2d 762, 767 (Mass. App. Ct. 1975), *aff'd*, 356 N.E.2d 249 (Mass. 1976).

**{14}** In our view, *Planning & Design* does not stand for the proposition that an implied-in-fact contract, as a matter of law, can never exist between two parties in the private procurement context. The Supreme Court did not address this question. Instead, it addressed only the question whether an implied contract existed in the public procurement context. Although the promise to consider all bids fairly, which is implied in the public procurement context, is based on statute and thus cannot automatically be implied in private bid solicitations, the absence of statutory obligations does not foreclose the possibility that an implied-in-fact contract may arise between parties in the private procurement context based on their own representations, course of conduct, and other factors that have been held to give rise to an implied-in-fact contract.

**{15}** At least one other jurisdiction has recognized a cause of action based on an implied contract in the private bid solicitation and selection process. In *New England Insulation Co. v. General Dynamics Corp.*, 522 N.E.2d 997, 998 (Mass. App. Ct. 1988), a company soliciting bids made representations in its solicitation that the bids submitted would remain in a locked file only to be opened after the closing date. The plaintiff's bid was unsealed early, and the information it contained was shared with the plaintiff's competitor, who was ultimately awarded the contract. *Id.* at 998-99. The plaintiff brought suit against the company, alleging that it relied on the solicitor's representations in deciding to bid. *Id.* As is the case here, the defendant company challenged the legal theory of the complaint. *Id.* at 999.

**{16}** The Massachusetts court held that the plaintiff could pursue a claim based on an implied contract. *Id.* at 1000-01. The court recognized that "requests for bids are usually nonbinding invitations for offers" and that the defendant retained the discretion to choose with whom it would contract. *Id.* at 999 (alteration, internal quotation marks, and citation omitted). However, the court reasoned that "[i]t does not necessarily follow . . . that [the defendant] could not limit its freedom to act by making representations in its invitations to bid which it knew or should have known would be reasonably relied upon by the plaintiff." *Id.* at 999. The court assumed without deciding that a promise to give fair consideration to all bids could not be implied in every private request for bids. *Id.* at 1000. However, it stated that this did not mean that, as a matter of law, the specific promise made by the solicitor to the bidder could not create a binding obligation. *Id.* It noted that "[t]here is surely no policy which would be served by allowing solicitors of bids in the private sector to ignore the conditions they themselves set and ask others to rely upon." *Id.* The court reversed the district court's grant of the defendant's motion to dismiss and remanded for an analysis of the facts. *Id.* at 1001.

**{17}** We are persuaded by the reasoning in *New England Insulation.* We recognize that in this case, Orion alleges that LANS made specific representations regarding the bid solicitation and selection process, which it relied upon, while in *New England Insulation*, the plaintiff's decision to bid was based on the solicitor's specific representation that it would keep all bids in a locked box until the closing date. *Id.* at 998. Although the cases are factually distinguishable in terms of what representations were made and how the promises

7

were allegedly breached, at this stage in the proceedings, the distinctions are irrelevant. For purposes of a motion to dismiss, it is significant that the *New England Insulation* court clearly recognized that the promises made by the solicitor in its requests for bids could be legally binding. *Id.* at 1000-01. Consequently, we agree with the Massachusetts court that no policy "would be served by allowing solicitors of bids in the private sector to ignore the conditions they themselves set and ask others to rely upon." *Id.* at 1000.

{18} Relying on the general principles of implied-in-fact contracts, we conclude that in the private solicitation context, as in other contexts, an implied-in-fact contract may be found based on the representations and conduct of the parties. We continue to recognize that the general private sector rule regarding solicitations for bids is that "unless a contrary intention is manifested" a request for bids "is not an offer but a request for offers[.]" Restatement (Second) of Contracts § 28 cmt. c; *Planning & Design*, 118 N.M. at 714, 885 P.2d at 635. However, as *Planning & Design* indicates, there are circumstances in the bid solicitation process that may give rise an implied contract regarding the process by which a bid will be selected. 118 N.M. at 714, 885 P.2d at 635. Thus, an implied-in-fact contract could arise in the private procurement process if a solicitor of bids makes specific representations regarding the processes by which it will select a bid, and a bidder reasonably relies on those representations in deciding to bid. *Id.* at 715, 885 P.2d at 636. Although these promises are not imposed by statute, that does not mean that they cannot be legally binding. *See New England Insulation*, 522 N.E.2d at 1000.

{19} The employment context is analogous here. Ordinarily in New Mexico, an employee is at will, and an employer may fire him or her for any or no reason. *See Garcia*, 1996-NMSC-029, ¶ 10. However, an employer may restrict its freedom to fire at-will employees by making specific promises that, when reasonably relied upon by the employee, give rise in an implied-in-fact employment contract. It follows that in the private bid solicitation context the solicitor of bids could restrict its freedom to select a contractor through any process it chooses by making specific promises regarding the selection process on which it would expect a bidder to reasonably rely in deciding to bid. Therefore, Orion's claim for breach of implied-in-fact contract is not barred as a matter of law.

{20} LANS contends that any reliance on our cases considering whether an implied-in-fact contract exists in the employment context and other contexts is misplaced. It contends that, aside from the public procurement case, in our other implied-in-fact contract cases, the parties had a pre-existing relationship. We consider this is a distinction without difference. An implied-in-fact contract is "based on [the] parties' mutual assent as manifested by their conduct." *Garcia*, 1996-NMSC-029, ¶ 15 n.1 (internal quotation marks and citation omitted). The parties' pre-existing relationship is but one factor to consider in determining whether the parties' conduct gave rise to an implied-in-fact contract, and it is not necessarily the determining one. Under either type of relationship, there is a presumption that no binding agreement is generally recognized, and it is only after a unilateral extension of an additional promise by one party that an implied-in-fact contract can potentially be created.

8

**{21}** Further, LANS cites to the out-of-jurisdiction cases of *King v. Alaska State Housing Authority*, 633 P.2d 256 (Alaska 1981), and *Hoon v. Pate Construction Co.*, 607 So. 2d 423 (Fla. Dist. Ct. App. 1992) (per curiam), as authority for the proposition that a private party soliciting bids does not have the same obligations as a public entity. We are not persuaded by the application of these cases to the circumstances here. In *King*, the Alaska Supreme Court considered whether bidders for a government redevelopment project who alleged improprieties in the selection process could recover under contract law. *King*, 633 P.2d at 258-59. Like our Supreme Court in *Planning & Design*, the court found "merit in the contention that an agency, in soliciting bids, implicitly contracts to give those bids fair and honest consideration." *King*, 633 P.2d at 261. The court held that "in exchange for a bidder's investment of the time and resources involved in bid preparation, a government agency must be held to an implied promise to consider bids honestly and fairly." *Id.* at 263. Nevertheless, the court stated that while this rule "recognizes that a promise of honest and fair consideration of bids can reasonably be implied in the public contract context, . . . such a promise cannot be implied in the private sphere." *Id.* at 262. This is because private parties do not have an obligation "to select the bid most consistent with the public interest." *Id.* While it is true that *King* recognized the distinction between the public and private procurement process, the case did not address the issue of whether one party can make a promise that will then be binding in the private procurement process.

**{22}** In *Hoon*, the Florida appellate court considered whether a district court erred in granting a disappointed bidder relief based on breach of an implied contract in a private solicitation. 607 So. 2d at 424-25. There, the plaintiff alleged that the solicitor of bids promised to award a job to the lowest bidder and breached an implied contract by failing to award it the job after it submitted the lowest bid. *Id.* at 425. The plaintiff asserted that there was an implied contract that its bid would receive fair consideration. *Id.* at 425-26. The appellate court disagreed. *Id.* at 426-27. The court recognized the general rule that in private construction a party soliciting a bid has the freedom to accept or reject it for any reason and agreed with the principle that "no contract is formed when a bid is made pursuant to an invitation to bid." *Id.* at 425-26. The court's ruling relied on the fact that, although the bid solicitation stated an intent to award the bid to the lowest bidder, it also stated the "[o]wner reserves [the] right to reject any or all bids for whatever reason he may deem necessary for his best interest, and to waive any or all formalities in regard to acceptance or rejection of any bid." *Id.* at 425 (internal quotation marks omitted). The court concluded that "[t]o recognize an implied contract in a situation where the parties agree that the written document provides that the owner may 'reject a bid for any reason' would be to emasculate the effect of that provision." *Id.* at 427. Thus, the court concluded that, based upon the actual claim set out in the pleadings, the defendants were entitled to a directed verdict on the plaintiff's implied contract claim. *Id.* at 426-27.

**{23}** *Hoon* does not suggest that there can never be an implied-in-fact contract in the private procurement process. The court simply stated the general rule that a private solicitor of bids may contract with whomever it chooses and then determined that the defendant's specific reservation of the right to reject any or all bids was binding on the parties. *Id.* at

426. We cannot disagree with this determination, however, it does not answer the question before this Court:  Can the solicitor of a private procurement bid create an implied-in-fact contract if the solicitor makes sufficient promises to the bidders that limit the solicitor's inherent freedom to select the recipient of the contract?

**{24}**     To the extent the court in *Hoon* relied on the specific provision in the written bid solicitation to conclude that no implied contract was established, New Mexico courts have taken a broader approach toward the determination of whether an implied-in-fact contract exists.  For example, our courts have held that an implied contract may exist between the parties even where a writing disclaims any intention of forming a contractual obligation. *See Beggs*, 2009-NMSC-023, ¶ 20; *Madrid v. Vill. of Chama*, 2012-NMCA-___, ¶ 15, ___ P.3d ___ (No. 30,764, May 1, 2012), *cert. denied*, 2012-NMCERT-006, ___ P.3d ___; *West v. Wash. Tru Solutions, LLC*, 2010-NMCA-001, ¶¶ 17-18, 147 N.M. 424, 224 P.3d 651.  In determining whether an implied-in-fact contract exists, "it is not any single act, phrase or expression, but the totality of all of these, given the circumstances and the parties' situation and objectives, which will control." *Kestenbaum*, 108 N.M. at 26, 766 P.2d at 286.  Because *Hoon* stated that the rights of the parties were controlled by the written bid solicitation, it is not clear whether a plaintiff's cause of action based upon an implied contract could have been recognized in Florida under another set of facts.

**{25}**     LANS also argues that to recognize a cause of action based on an implied-in-fact contract in the private procurement context would be an unprecedented expansion of New Mexico law and encourage unprecedented litigation by disappointed bidders.  We are not persuaded.  New Mexico recognizes implied-in-fact contracts in a variety of factual circumstances. Certainly, our Supreme Court's decision in *Planning & Design* did not open the floodgates of litigation in the public procurement arena as that has been the only appellate decision on the issue since 1994.  We see no reason that allowing Orion to bring its claim for breach of an implied-in-fact contract would be any different.  The fact that there have been no formal appellate opinions addressing this issue in New Mexico in the past does not prevent Orion from seeking recovery based upon a well recognized theory of law, the implied-in-fact contract.

**{26}**     We hold that Orion's claim for breach of an implied-in-fact contract may proceed.  Based on the principles of implied-in-fact contracts that are set out in New Mexico case law, we conclude that an implied-in-fact contract can arise in the private solicitation context. We therefore reverse the district court's order dismissing Orion's claims.

**Injunctive Relief Is Not Available Under the Circumstances Here**

**{27}**     In its complaint, Orion requested that the district court permanently enjoin LANS and COMPA from proceeding with the performance of the contract at issue.  Both Defendants filed motions seeking the dismissal of Orion's claim for permanent injunctive relief.  LANS filed a motion for judgment on the pleadings pursuant to Rule 1-012(C) in which it argued that permanent injunctive relief was never available to a disappointed bidder.  COMPA filed

10

a motion for partial summary judgment in which it asserted that injunctive relief was unavailable because Orion had an adequate remedy at law. The district court granted Defendants' motions.

**{28}** Our review of the district court's grant of LANS's motion for judgment on the pleadings is de novo. *See Glaser*, 2012-NMSC-012, ¶ 8. We also review the district court's grant of COMPA's motion for partial summary judgment de novo. *See Smith v. Durden*, 2012-NMSC-010, ¶ 5, 276 P.3d 943. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; *see* Rule 1-056. Here there are no disputes of material fact; therefore, we only consider whether summary judgment was appropriate as a matter of law.

**{29}** In granting Defendants' motions, the district court concluded that injunctive relief was never available to a disappointed bidder like Orion. The district court based its conclusion on *Planning & Design*, which it understood to limit a disappointed bidder's remedy to reliance damages that include the expenses incurred in preparing and submitting the bid. Orion argues that *Planning & Design* was decided on the facts and does not preclude a court from granting a permanent injunction to a disappointed bidder as a matter of law. We agree with Orion that the district court erred in concluding that injunctive relief was never available to a disappointed bidder. However, we hold that injunctive relief is not available under the circumstances here and, therefore, dismissal of Orion's claim for injunctive relief was proper. In addition, we hold that the district court's limitation on the available remedies in a private sector breach of implied-in-fact contract case was in error. We first address the basis of the district court's ruling and then discuss what remedies may be available to Orion.

**{30}** *Planning & Design* did not establish a blanket rule that permanent injunctive relief was never available to a disappointed bidder where the solicitor of bids has breached an implied contract in the procurement process. There, the district court had preliminarily enjoined the city from awarding the contract to anyone but the plaintiff. 118 N.M. at 709, 885 P.2d at 630. However, by the time the case reached our Supreme Court, the city had rejected all bids on the project. *Id.* at 712, 885 P.2d at 633. Thus, in contrast to this case, the city in *Planning & Design* did not award any contract under the allegedly flawed procurement process and, therefore, there was no performance to enjoin. Thus, the Court concluded, "under the circumstances, injunctive relief [was] pointless." *Id.* at 715, 885 P.2d at 636. Injunctive relief was simply not feasible based on the facts before the Court and, thus, reliance damages were the appropriate remedy. *Id.* However, this ruling does not preclude a district court from granting a permanent injunction under another set of facts. *See, e.g.*, *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 378-79 (2009) (granting limited injunctive relief in post-award bid protest where the current contracts would be left in place while bids were reevaluated in accordance with statute and regulation); *Spiniello Constr. Co. v. Town of Manchester*, 456 A.2d 1199, 1200, 1202-03 (Conn. 1983) (upholding the district court's grant of a permanent injunction restraining a municipality and a bidder from entering into a public works contract where the bidding statute had been violated).

**{31}** Notwithstanding that injunctive relief may be the proper remedy in this type of case, we conclude that, under the facts of this case, injunctive relief is unavailable to Orion. "Injunctions are harsh and drastic remedies that should issue only in extreme cases of pressing necessity and only where there is no adequate remedy at law." *Insure N.M., LLC v. McGonigle*, 2000-NMCA-018, ¶ 7, 128 N.M. 611, 995 P.2d 1053 (alterations, internal quotation marks, and citation omitted). An irreparable injury for which there is no adequate remedy at law is one "which cannot be compensated or for which compensation cannot be measured by any certain pecuniary standard." *State ex rel. State Highway & Transp. Dep't v. City of Sunland Park*, 2000-NMCA-044, ¶ 19, 129 N.M. 151, 3 P.3d 128 (internal quotation marks and citation omitted). Here, where COMPA has been performing on the contract since mid-2009, the damage to COMPA outweighs any harm to Orion. More importantly, there is also an adequate remedy at law in this case.

**{32}** Orion's complaint seeks both permanent injunctive relief and money damages as remedies for the breach of the alleged implied-in-fact contract between it and LANS. Our case law establishes that money damages are available to a disappointed bidder who prevails on a breach of implied contract claim in order to "compensate the bidder's 'interest in being reimbursed for loss caused by reliance on the contract by being put in as good a position as he would have been in had the contract not been made.'" *Planning & Design*, 118 N.M. at 715, 885 P.2d at 636 (quoting Restatement (Second) of Contracts § 344(b) (1981)). There is no dispute that these damages can be readily calculated.

**{33}** Additionally, COMPA does not dispute that expectancy damages are available to Orion in the event that it can prove that, but for LANS's breach of the alleged implied-in-fact contract, Orion would have been awarded the contract. Thus, to the extent Orion argues that it would have been awarded the contract, COMPA contends that Orion may be adequately compensated for its alleged injuries. Orion agrees that injunctive relief is not necessary if expectancy damages are an available remedy. Although disappointed bidders in the public procurement context are often limited by public policy or statute to the recovery of reliance damages, these constraints are not present here. *Cf.* 28 U.S.C. § 1491(b)(2) (2011) (conferring jurisdiction on the Court of Claims to "award any relief [it] considers proper, including declaratory and injunctive relief except that any monetary relief *shall be limited to bid preparation and proposal costs*" (emphasis added)); *Planning & Design*, 118 N.M. at 715, 885 P.2d at 636 (joining other jurisdictions that award the expenses incurred in preparing and submitting a bid to disappointed bidders of flawed public procurements); *State Mech. Contractors, Inc. v. Vill. of Pleasant Hill*, 477 N.E.2d 509, 511 (Ill. App. Ct. 1985) (explaining that the public purpose is not served by requiring the taxpayer to pay the contract price to the bidder awarded the contract and profits that a disappointed bidder would have realized if it had been awarded the contract). Accordingly, we see no reason that a disappointed bidder in a private solicitation could not pursue a claim for expectation damages. *See* Restatement (Second) of Contracts § 347 (1981) (discussing the general measure of damages). Money damages are available to Orion in this case, and Orion has not alleged any facts nor made any argument to persuade us that money damages would not compensate it for the alleged injury here. We affirm the district court's dismissal of Orion's

claim for injunctive relief.  We hold that the appropriate remedy in this type of case is not limited to reliance damages and may include expectation damages.

**CONCLUSION**

**{34}**    For the reasons set forth above, we reverse the district court's order dismissing Orion's claim for breach of implied contract and dismissal of its complaint with prejudice. We affirm the district court's order denying Orion's motion for injunctive relief.  However, we reverse the district court's ruling limiting the nature of damages available to Orion.

**{35}    IT IS SO ORDERED.**

 

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

**Topic Index for** *Orion Technical Resources, LLC v. Los Alamos Natl. Security, LLC*, **No. 30,928**

**APPEAL AND ERROR**
Preservation of Issues for Appeal
Standard of Review

**CIVIL PROCEDURE**
Judgment on the Pleadings

**CONTRACT**
Bid
Breach
Implied Contract
Public Policy

**EMPLOYMENT LAW**
Employment at Will

**JUDGMENT**
Judgment on the Pleadings

**REMEDIES**
Injunctions
Measure of Damages