# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-054

Filing Date: May 10, 2021

No. A-1-CA-38713

EDWIN WILSON,

       Plaintiff-Appellee,

v.

BERGER BRIGGS REAL ESTATE
& INSURANCE, INC.; PAM MUZZI;
TRUDY BEST; and MARY JO
DAWSON,

       Defendants-Appellants,

and

CSU PRODUCER RESOURCES, INC.
and CINCINNATI SPECIALITY
UNDERWRITERS INSURANCE
COMPANY,

       Defendants.

APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY
John F. Davis, District Judge

Certiorari Denied, October 20, 2021, No. S-1-SC-38845. Released for Publication
November 9, 2021.

Law Office of Geoffrey R. Romero
Geoffrey R. Romero
Albuquerque, NM

Bencoe & Lacour Law P.C.
Lori Bencoe
Cherie LaCour
Albuquerque, NM

Martinez, Hart, Thompson & Sanchez, P.C.
Julio C. Romero
Bruce E. Thompson

Albuquerque, NM

for Appellee

Butt Thornton & Baehr PC
James H. Johansen
Jane A. Laflin
Felicia C. Boyd
Albuquerque, NM

Madison, Mroz, Steinman, Kenny & Olexy, P.A.
Gregory D. Steinman
Albuquerque, NM

for Appellants

## OPINION

### HANISEE, Chief Judge.

**{1}** In this interlocutory appeal, we are asked by Berger Briggs Real Estate & Insurance, Inc. (Berger Briggs) to resolve the validity of an assignment of claims arising from an agreement to procure general liability insurance on behalf of The Improved Benevolent Protective Order of the Elks of the World Albuquerque Navajo Lodge #863 (the Lodge). Berger Briggs appeals from the denial of its motion for summary judgment on all claims due to unassignability. Berger Briggs contends that Plaintiff Edwin Wilson (Wilson), to whom the Lodge assigned its claims against Berger Briggs, is precluded as a matter of New Mexico law and policy from asserting claims against Berger Briggs. We affirm.

## BACKGROUND

**{2}** On February 14, 2015, Wilson attended a comedy show at the Lodge. During the performance, an altercation broke out between two patrons. A person with the performing group discharged a firearm at the crowd, striking Wilson and causing traumatic injury to his spine, which rendered him paralyzed below the waist.

**{3}** In August 2012, two-and-a-half years prior to the shooting, the Lodge's representative, L.C. Gray, approached Berger Briggs to procure a general liability policy. Gray met with Defendant Pam Muzzi, an employee of Berger Briggs, to discuss the Lodge's specific needs in its general liability policy. While Gray contends that she told Muzzi that the Lodge "needed coverage for anything that happened in the Lodge," Muzzi asserts that Gray told her that the Lodge could not afford an expensive policy and did not seek coverage for assaults and batteries that might take place at the Lodge. Muzzi procured a quote from Cincinnati Specialty Underwriters Insurance Company (Cincinnati Specialty) for $2,291.82 for general liability coverage, which contained

exclusions for assault, battery, and firearm coverage. The Lodge entered into a general liability policy with Cincinnati Specialty with these exclusions, effective August 23, 2014.

{4}     On May 26, 2015, Wilson filed a complaint for personal injuries and damages against the Lodge and others in the Second Judicial District Court for claims related to the shooting. On July 22, 2015, Cincinnati Specialty filed a declaratory action against the Lodge in federal district court. On November 23, 2015, that court issued a memorandum opinion and order finding that the policy procured by Berger Briggs did not provide coverage to the Lodge for Wilson's injuries and ordered default judgment against the Lodge. Back in state district court on February 22, 2016, the Lodge stipulated to liability and assigned to Wilson all claims it had against Berger Briggs and all related insuring entities, including commercial tort claims, statutory violations, and breaches of contract. On August 1, 2016, the state district court held an evidentiary hearing and entered a judgment, awarding damages in the amount of $14,502,807.69 to Wilson. Thereafter and pursuant to the assignment, Wilson filed suit against Berger Briggs, Cincinnati Specialty, and others, also in the Second Judicial District, alleging as to Berger Briggs negligent failures to procure insurance coverage and inform, negligent misrepresentation, along with breaches of contract, fiduciary duties, and the Unfair Trade Practices Act.

{5}     On December 4, 2018, Berger Briggs filed its "Motion and Memorandum for Summary Judgment on All Claims Due to Unassignability," in which Berger Briggs asserted that the claims are unassignable because they are personal injury claims. On April 24, 2019, the district court held a hearing on the motion for summary judgment, and on July 16, 2019, entered an order denying Berger Briggs' motion for summary judgment. Berger Briggs filed a motion to reconsider, which the district court denied, or alternatively a motion to certify the entire order denying Berger Briggs' motion for summary judgment for interlocutory appeal. The district court attached the entirety of its July 16, 2019, order as Exhibit A to its order certifying questions of assignability for interlocutory appeal. On March 31, 2020, we granted Berger Briggs' application for interlocutory appeal.

## DISCUSSION

### I.     The Lodge's Commercial Tort, Breach of Contract, and Statutory Violation Claims Were Validly Assigned to Wilson

{6}     On appeal, Berger Briggs requests that we reverse the denial of its motion for summary judgment and raises four issues. First, it asserts that the claims are personal and, therefore, the assignment is invalid as a matter of New Mexico law and policy. Second, it argues that there is no assignable contract between itself and the Lodge. Third, it asserts that the Unfair Practices Act (UPA) prohibits the claims from being assigned. Finally, Berger Briggs argues that, contrary to the district court's findings, the Uniform Commercial Code (UCC) does not demonstrate a policy in favor of the purported assignment. Wilson answers that the Lodge's claims against Berger Briggs, which included claims of negligent failure to procure the requested coverage, negligent misrepresentation, and breach of contract, are contract and commercial tort claims and

thus assignable. For the reasons that follow, we hold that under New Mexico law, the claims at issue are commercial in nature, were validly assigned to Wilson, and therefore Wilson is not barred from asserting such claims against Berger Briggs.

**Standard of Review**

**{7}**     Berger Briggs' appeal from the "denial of a motion for summary judgment presents a question of law. We therefore review de novo the [district] court's denial of summary judgment." *Bartlett v. Mirabal*, 2000-NMCA-036, ¶ 4, 128 N.M. 830, 999 P.2d 1062. "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Noice v. BNSF Ry. Co.*, 2015-NMCA-054, ¶ 5, 348 P.3d 1043 (internal quotation marks and citation omitted). "The movant must make a prima facie showing of entitlement to summary judgment. Then, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citations omitted). "If the facts are not in dispute, and only their legal effects remain to be determined, summary judgment is proper." *Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241.

**A.     The Lodge's Claims Against Berger Briggs Are Not Personal Tort Claims**

**{8}**     In New Mexico, personal injury claims are not assignable, yet our jurisprudence suggests commercial disputes are. *See Quality Chiropractic, PC v. Farmers Ins. Co. of Ariz.*, 2002-NMCA-080, ¶ 8, 132 N.M. 518, 51 P.3d 1172. In *Quality Chiropractic*, this Court explained the common law rationale behind this distinction to reflect concern that the "assignment of personal injury claims would lead to unscrupulous trafficking in litigation as a commodity." *Id*. ¶ 10. In disallowing assignment of a claim for personal injury, *Quality Chiropractic* agreed with the Indiana Supreme Court, which prohibited the assignment of tort suits growing more generally out of "wrongs done to the person, reputation, or feelings of the injured party" while recognizing that "[c]ontract-based choses in action have been deemed assignable, except for [those] which are purely personal in nature (like marriage contracts)." *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 340 (Ind. 1991), *abrogated on other grounds by Liggett v. Young*, 877 N.E.2d 178, 183 (Ind. 2007). As yet, neither law nor jurisprudence in New Mexico has evolved to permit the assignment of personal causes of action or directly held that claims of a commercial nature are indeed assignable. [1] Berger Briggs asserts that "all of [the Lodge]'s claims are personal in nature and cannot be assigned to Wilson as a matter of law" because

---

1A number of jurisdictions have altogether abandoned the common law rule and allow the assignment of *any cause of action. See, e.g., Red Giant Oil Co. v. Lawlor, 528 N.W.2d 524, 533 (Iowa 1995) (holding* that "because insurers have available to them a variety of defenses . . . we fail to see why legally it should make any difference who sues the insurer—the insured or the insured's assignee"); *see also* Professor Louis F. Del Duca, *Commercial Tort Claims Come Into Focus-Hurdles and Hoops,* 45 No. 2 UCC L. J., art. 2 (2013) (the Committee stated that it "sees little reason to continue the general exclusion of tort claims that are otherwise assignable under non-UCC law" (internal quotation marks and citation omitted)) *citing* Uniform Commercial Code Article 9: Report, 1992 ALI and Nat. Conf. of Commissioners on Uniform State Laws. But as we observed in *Quality Chiropractic*, our view is that in New Mexico, "the [L]egislature is in the best position to address . . . and . . . consider the competing policy interests" regarding the assignability of personal injury claims. 2002-NMCA-080, ¶ 33.

"[c]ontrary to the [d]istrict [c]ourt's finding, New Mexico law and public policy prevent the assignment of claims asserted in this case." Wilson answers that the district court correctly recognized Wilson's claims as "well settled claims arising in commercial tort and breach of contract" against insurance agents or brokers.

**{9}** We begin with Wilson's arguments, which are consistent with the district court's ruling. Wilson is first correct that New Mexico allows claims in tort against insurance agents or brokers, such as those at issue here. For instance, New Mexico law permits an insured to sue an agent for failing to obtain a requested policy. *See Topmiller v. Cain*, 1983-NMCA-005, ¶ 12, 99 N.M. 311, 657 P.2d 638 (stating that "[i]t seems to be well settled that an insurance agent or broker who undertakes to provide insurance for another, and through his own fault or neglect, fails to do so, is liable" (internal quotation marks and citation omitted)). "[L]iability may be predicated either upon the theory that [the] defendant is the agent of the insured and has breached a contract to procure a policy of insurance, or that he owes a duty to his principal to exercise reasonable skill, care, and diligence in securing the insurance requested and negligently failed to do so." *Sanchez v. Martinez*, 1982-NMCA-168, ¶ 14, 99 N.M. 66, 653 P.2d 897. "An agent who agrees to procure or renew an expired policy of insurance has a duty to either obtain the insurance, renew or replace the policy, or seasonably notify the principal that he is unable to do so in order that the principal may obtain insurance elsewhere." *Id.* ¶ 15. A suit for negligence may be predicated upon either an express or implied agreement between the parties. *See id.*

## 1. Commercial Tort Claims

**{10}** Given that the Lodge can assert claims against Berger Briggs under New Mexico law, Wilson next contends that the assignment of those claims by the Lodge to him is proper, an argument he contends to be "bolstered by several New Mexico appellate court opinions." Although none of the cases cited by Wilson directly upheld the assignability of a commercial tort claim, they nonetheless demonstrate the assignability of such claims in New Mexico. For instance, in *Dove v. State Farm Fire & Casualty Co.*, this Court recognized an insured property owner's assignment of "all rights, claims and causes of action, together with the proceeds therefrom" to a tenant who was injured while performing maintenance work on the property, for the failure of the insuring defendant "to defend and/or indemnify" the property owner for the tenant's injuries. 2017-NMCA-051, ¶¶ 7, 24, 399 P.3d 400 (internal quotation marks omitted). In *Truck Insurance Exchange v. Gagnon*, we resolved an underlying scope of commercial insurance coverage question following assignment of the defendants' claims against an insurer to the plaintiff who had been sexually harassed at work and with whom the defendants had reached a settlement agreement. 2001-NMCA-092, ¶¶ 1-3, 131 N.M. 151, 33 P.3d 901. Both opinions are consistent with that recognized, but not directly held in *Quality Chiropractic*. *See* 2002-NMCA-080, ¶ 8 (observing that as the common law rule prohibiting assignment "became unworkable, courts carved out exceptions, and eventually allowed assignments in commercial disputes"). More directly, in *Brown v. Gray*, 227 F.3d 1278, 1294-95 (10th Cir. 2000), the Tenth Circuit Court of Appeals determined that an assignment of a defendant police officer's claim for defense costs to a plaintiff shooting a victim was valid under Colorado law, which "generally favors the

assignment of rights pursuant to a valid contractual arrangement[,]" noting that "[a]ssignment in this circumstance does not encourage unjustified suits."

**2.    Personal Tort Claims**

**{11}**    Citing cases that held personal injury claims were unassignable, Berger Briggs argues that the claims assigned to Wilson are personal and therefore unassignable. Importantly, Berger Briggs points to no authority that prohibits the assignment of claims arising from interactions that led to commercial contracts, much less claims based on contracts themselves, nor does it meaningfully explain how the claims at issue are either "personal injury" or "personal" claims. "Where a party cites no authority to support an argument, we may assume no such authority exists." *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482. Rather, Berger Briggs points only to *Quality Chiropractic*, which upheld the disallowance of an assignment of a chiropractic clinic patient's personal injury claims arising from a car accident given our refusal to "abrogate the common law rule prohibiting the assignment of personal injury claims[.]" 2002-NMCA-080, ¶¶ 1, 36. To reiterate, in *Quality Chiropractic* we agreed with the defendant that "allowing injured tort victims to assign . . . their personal injury claims could add unnecessary complications to the settlement of relatively straightforward cases." *Id.* ¶ 25. Although Berger Briggs aptly points out that we did not allow the assignment at issue in *Quality Chiropractic*, we determine the claims at issue here *not* to be personal injury or other personal tort claims, but to fall squarely within the category of commercial tort claims.

**{12}**    The agreement between the Lodge and Wilson states:

> 28. In consideration for the assignment of [the Lodge's] rights and causes of action which [the Lodge] may have against Berger Briggs . . . for liability incurred to [the Lodge] as a result of failure to procure proper coverage, failure to advise of material exclusions to coverage, breach of fiduciary duty, or any other causes of action which [the Lodge] may have against Berger Briggs and/or any of its agents, employees or representatives.

Importantly, the claims assigned by the Lodge to Wilson included those

> . . . related to insurance coverage, breach of contract, breach of the duty to defend, breach of the duty to pay, breach of the duty to settle, other bad faith insurances practices of any kind, statutory violations, unfair claims or trade practices, negligence, misrepresentation, failure to procure proper coverage, failure to advise of material exclusions to coverage, breach of fiduciary duty, compensatory and punitive damages, attorney[] fees and interest.

Consistent with the language of the agreement, the claims brought by Wilson herein—including negligent failures to procure insurance coverage and inform, negligent misrepresentation, along with breaches of contract, fiduciary duty, and the UPA—all arise from the business relationship of the Lodge and its agent, Berger Briggs, and in no

way relate to claims for personal injuries or violation of purely personal rights caused by that relationship. Rather, each claim wholly arose from an agreement between the Lodge, who requested that Berger Briggs procure a general liability policy on its behalf, and Berger Briggs, who obtained insurance quotes and assisted the Lodge with obtaining the policy it sought. The relationship between the Lodge and Berger Briggs was little more than an arm's length commercial transaction between two businesses. Indeed, Wilson suffered personal injury at the hands of the underlying tortfeasor, who is not a party to this litigation, and the Lodge, against whom Wilson procured a personal injury judgment. We reject Berger Briggs' contention that Wilson's claims against it allege tortious conduct of a personal nature.

{13}    Berger Briggs next argues that the claims assigned to Wilson arose under personal service contracts, which it contends are unassignable. Pointing out that "personal wrongs and contracts of a personal nature involving confidence, skill, and others of like nature" are not assignable under *Parker v. Beasley*, 1936-NMSC-004, ¶ 10, 40 N.M. 68, 54 P.2d 687, Berger Briggs likens the nature of the relationship between itself and the Lodge to an employment contract. Indeed, our jurisprudence continues to recognize that personal service contracts may be assignable only with consent. *See generally Campbell v. Millennium Ventures, LLC*, 2002-NMCA-101, ¶ 22, 132 N.M. 733, 55 P.3d 429 (concluding that an employment agreement with a non-solicitation clause was assignable with consent of the parties to the assignment). But unlike personal service contracts, Berger Briggs' business relationships with its clients do not entail the sort of contracted-for personal qualities or skills that would prohibit assignability of a cause of action arising therefrom. *See id*. ¶ 2 (involving an employment agreement whereby the plaintiff was hired to sell insurance on behalf of the defendant); *see also Baker v. Conoco Pipeline Co.*, 280 F. Supp. 2d 1285, 1295-96 (N.D. Okla. 2003) (providing examples of duties "too personal in character" to permit assignment, including "a contract to furnish an abstract of title; a contract to render professional services as a physician, lawyer, or architect . . . a contract of entrustment of funds or property of another").

{14}    Because we agree with the district court that none of the causes of action brought by Wilson against Berger Briggs state injuries or claims of a personal nature, but are instead commercial in nature, and our jurisprudence suggests and common law establishes that such commercial claims are assignable, we conclude there to be no error in the district court ruling in this regard and hold that commercial claims of the nature at issue in this case are assignable.

**B.    The Lodge's Claims Against Berger Briggs Were Commercial Claims Arising Under Contract**

{15}    Citing little more than the committee commentary to UJI 13-818 NMRA (governing transfers of rights and duties under a contract), which states that generally the term " 'assignment' refers only to rights or interests under a contract[,]" Berger Briggs asserts that in addition to the claims brought by Wilson being commercial in nature, there must have been a contract between Berger Briggs and the Lodge, absent which "there can be no assignment arising under a contract." But the sole direct

authority Berger Briggs cites for this proposition—UJI 13-818—states no such thing; rather, it instructs in circumstances where an assignment is made under an existing contract. The UJI does not purport to address all assignments in law or require that an underpinning contract is a prerequisite for a commercial claim to be validly assigned. We assume that after diligent search Berger Briggs was unable to find supportive authority for the expansive application of UJI 13-818 it seeks. "We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority." *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Nonetheless, and given both that the common law first carved its exception for claim assignability in circumstances of contract, *see Picadilly, Inc.*, 582 N.E.2d at 340 (stating that "[t]he chose in action based on contract was the first to become assignable, primarily out of economic necessity"), and that most commercial interactions indeed involve contracts between parties, we address whether a contract existed between Berger Briggs and the Lodge.

**{16}**   "A contract is a legally enforceable promise." *Nance v. L.J. Dolloff Assocs.*, 2006-NMCA-012, ¶ 19, 138 N.M. 851, 126 P.3d 1215. "Ordinarily, to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 9, 121 N.M. 728, 918 P.2d 7 (internal quotation marks and citation omitted). "Consideration consists of a promise to do something that a party is under no legal obligation to do or to forbear from doing something he has a legal right to do." *Luginbuhl v. City of Gallup*, 2013-NMCA-053, ¶ 15, 302 P.3d 751 (internal quotation marks and citation omitted). We have previously stated that "evidence of custom or course of conduct between the parties may give rise to a contract implied in fact." *Orion Tech. Res., LLC v. Los Alamos Nat'l Sec., LLC*, 2012-NMCA-097, ¶ 10, 287 P.3d 967 (alteration, internal quotation marks, and citation omitted). Our courts may consider written representations, oral representations, the conduct of the parties, or a combination of the representations and conduct to determine the existence of an implied-in-fact contract. *See Garcia*, 1996-NMSC-029, ¶ 10. "Whether an implied-in-fact contract arises from the representations of the parties is dependent on whether the representations create a reasonable expectation of contractual rights." *Orion*, 2012-NMCA-097, ¶ 10.

**{17}**   In arguing that there was no contract between itself and the Lodge and that there must be, Berger Briggs relies on *Porter v. Butte Farmers Mutual Insurance Co.*, in which our Supreme Court determined that an application by a person seeking insurance is a "mere offer or proposal" and "before the contract of insurance is effected and any contractual relationship exists between the parties, it is necessary that the application be accepted by the insurer[.]" 1961-NMSC-028, ¶ 14, 68 N.M. 175, 360 P.2d 372 (per curiam). But *Porter* addresses the question of whether a contact existed between a claimed insured and an insurer, which in this case would be an analysis more applicable to an inquiry as to whether there was a contract between the Lodge and its insurance provider—Cincinnati Specialty.[2] But that is not the question presented in this case;

---

2After determining that this case involves an assignment arising under a contract, the district court explained "[t]here is a strong public policy in New Mexico to promote ethical claims handling by insurance

rather, as Berger Briggs itself argues the question is whether there was a contract between Berger Briggs and the Lodge. To answer this, we must resolve whether the arrangement between Berger Briggs and the Lodge, under which Berger Briggs agreed to procure quotes from insurance companies and assist the Lodge in entering into a contract with an insurer that would then provide a new insurance policy, was an implied-in-fact contract. While neither party provides evidence of a written contract, nor cites to where in the record a written contract exists, the very nature of Berger Briggs' business requires it to enter into agreements with insurance policy seekers, under which Berger Briggs procures insurance policies that meet its clients' needs and assists them in acquiring such policies. As argued by Wilson and determined by the district court, we conclude there to be an implied-in-fact contract between the Lodge and Berger Briggs for the procurement of insurance quotes.

**{18}** The distinction between an express and an implied contract involves "no difference in legal effect, but lies merely in the mode of manifesting assent." Restatement (Second) of Contracts: How a Promise May Be Made § 4 cmt. a (1981). Implied-in-fact contracts are "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Hercules, Inc. v. United States*, 516 U.S. 417, 424 (1996) (internal quotation marks and citation omitted); 1 Williston on Contracts: Express Contracts Including Contracts Inferred or Implied in Fact § 1:5 (4th ed. 2012) (stating "intention to make a promise may be manifested in language or by implication from other circumstances, including the parties' course of dealing or course of performance, or a usage of trade"). We have previously stated that "[e]vidence of custom or course of conduct between the parties may give rise to a contract implied in fact." *Sanchez*, 1982-NMCA-168, ¶ 15. "Our courts will also look to written representations, oral representations, the conduct of the parties, or a combination of representations and conduct to determine whether an implied-in-fact contract exists." *Orion*, 2012-NMCA-097, ¶ 10 (alteration, omissions, internal quotation marks, and citation omitted). Whether an implied-in-fact contract arises from the representations of the parties is dependent on whether the representations create a reasonable expectation of contractual rights. *See Garcia*, 1996-NMSC-029, ¶ 11. "The reasonableness of expectations is measured by just how definite, specific, or explicit . . . the representation or conduct relied upon" has been. *Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶ 14, 115 N.M. 665, 857 P.2d 776.

**{19}** Here, an agreement implied in fact between the Lodge and Berger Briggs is inferred by the parties' meeting of the minds in August 2012, where the Lodge sought

---

carriers and their employees and agents." Berger Briggs asserts that "[i]t is apparent that the [district c]ourt confused [Berger Briggs] and [Cincinnati Specialty]" and contends that the Lodge's assignment of its claims to Wilson "is distinguishable from any assignment of bad faith claims made under a valid written policy of insurance for which there is coverage." *See Dydek v. Dydek*, 2012-NMCA-088, ¶ 69, 288 P.3d 872 (holding that NMSA 1978, Section 59A-16-30 (1990), which permits the recovery of actual damages in bad faith causes of action against insurance companies, applied to a third-party claimant). While Berger Briggs is correct that the assignment at issue is unlike the assignment of a bad faith cause of action in exchange for release of liability, neither the Lodge nor Wilson asserts a claim of bad faith against Berger Briggs.

assistance from Berger Briggs in its effort to procure a general liability insurance policy. More specifically, the Lodge's representative, Gray, approached Berger Briggs and requested help obtaining a new insurance policy, after which Berger Briggs' representative, Muzzi, presented two quotes to Gray. After their initial meeting, Gray and Muzzi continued to correspond regularly via email regarding the Lodge's need for an insurance policy. Berger Briggs was also paid a fee in exchange for the services it provided the Lodge. Moreover, by the nature of its business as an insurance agency, Berger Briggs impliedly contracts with its clients to negotiate with insurance companies and acquire insurance policies on their behalf. *See Gordon v. N.M. Title Co.*, 1966-NMSC-263, ¶ 6, 77 N.M. 217, 421 P.2d 433 (stating "by the very nature of the title insurance business, the New Mexico Title Company agreed that they would make a thorough investigation . . . into the existence or non-existence of liens under the laws of New Mexico" (internal quotation marks omitted)); *see also Sanchez*, 1982-NMCA-168, ¶ 15 (determining that an insurance agent's liability may be premised upon an express or implied agreement).

**{20}** While Berger Briggs cites *Porter*, 1961-NMSC-028, ¶ 14, for the proposition that in New Mexico, "the process for obtaining insurance, 'is not the contract but is a mere offer or proposal for a contract of insurance,' " asserting that "there is no contract between [the Lodge] and Berger[]Briggs based solely on the procuring insurance," *Porter* considered a relationship between an insurer and an insured and affirmed a district court's conclusion that insurance policies that had been in place between the parties had expired. *Id.* ¶¶ 6, 27. Such is, in our view, altogether different than that of the relationship between an agency, such as Berger Briggs, engaged in the altogether different practice of procuring insurance for its clients, such as the Lodge, in exchange for a fee separate and apart from that later paid by the same client to an insurer in exchange for insurance.

**{21}** Under this circumstance—a business relationship in which one entity sought from another that which was the other's specialty and paid for the service provided in exchange for that specialization, we conclude that an implied-in-fact contract existed between the Lodge and Berger Briggs. *See Orion*, 2012-NMCA-097, ¶¶ 19, 26 (holding that an implied-in-fact contract arose when the solicitor made representations regarding bid selection and the bidder reasonably relied on such representations); *Whittington v. State Dep't of Pub. Safety*, 2004-NMCA-124, ¶ 10, 136 N.M. 503, 100 P.3d 209 (holding that the employee manual created an implied contract governing the terms of employment); *see also Plan. & Design Sols. v. City of Santa Fe*, 1994-NMSC-112, ¶ 27, 118 N.M. 707, 885 P.2d 628 (holding that in requesting bids for a proposed development, the city entered enter into an implied contract that it would fairly consider each bid). We hold that the Lodge's commercial claims assigned to Wilson arose from an implied-in-fact contract between the Lodge and Berger Briggs.

## C.     Wilson Has Standing to Allege UPA Claims

**{22}** Berger Briggs argues that "[c]ontrary to the [d]istrict [c]ourt's [o]rder, the UPA claims are not assignable." It argues that "[t]he UPA is a consumer protection law and, therefore, 'gives standing only to buyers and sellers of goods and services.' " (Quoting

*Hicks v. Eller*, 2012-NMCA-061, ¶ 20, 280 P.3d 304.) Wilson answers that such a limitation is not found within the UPA, and if the Legislature intended to include such a limitation it would have done so within the text of the UPA.

**{23}** The UPA makes it unlawful to employ "[u]nfair or deceptive trade practices . . . in the conduct of any trade or commerce." NMSA 1978, § 57-12-3 (1971); *see also* NMSA 1978, § 57-12-2(C) (2019) (defining "trade" or "commerce" to include "the advertising, offering for sale or distribution of any services and any property and any other article, commodity or thing of value, including any trade or commerce directly or indirectly affecting the people of this state"). "Any person who suffers any loss of money or property . . . as a result of any employment by another person of a method, act or practice declared unlawful by the [UPA] may bring an action to recover actual damages[.]" NMSA 1978, § 57-12-10(B) (2005). Its fundamental purpose is to protect consumers from unscrupulous business practices regardless of whether those consumers are directly or indirectly affected. *See* § 57-12-2(C). Because "the UPA constitutes remedial legislation, we interpret the provisions of [the] Act liberally to facilitate and accomplish its purposes and intent." *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 30, 147 N.M. 583, 227 P.3d 73 (internal quotation marks and citation omitted). "It is the task of the courts to ensure that the [UPA] lends the protection of its broad application to innocent consumers." *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 48, 329 P.3d 658 (internal quotation marks and citation omitted).

**{24}** Relying on *Williams v. Foremost Insurance Co.*, 102 F. Supp. 3d 1230 (D.N.M. 2015), Berger Briggs argues that UPA claims are limited to actual consumers of goods and services. In *Williams*, the federal district court of New Mexico held that an insured homeowner's houseguest, who brought a putative class action against homeowner's insurer, alleging that the insurer violated New Mexico law by interviewing her too soon after her injury, could not pursue a UPA claim against the insurer. *Id.* at 1233, 1247. The court explained that the plaintiff's UPA claims were invalid "because New Mexico law currently restricts UPA claims to actual consumers of goods and services, and relevant law provides no basis to expand the UPA to give standing to a non-consumer third-party claimant like [the plaintiff]." *Id.* at 1247. Moreover, in *Williams*, the federal district court noted that "[a]lthough the UPA may allow claims against insurers in some circumstances, the plaintiff must show that the statement was made or the offending act or practice was committed in connection with the sale of the insurance." *Id.* at 1240 (alteration, emphasis, internal quotation marks, and citation omitted).

**{25}** Berger Briggs asserts that, like the plaintiff in *Williams*, Wilson did not purchase any goods or services and "therefore, has no direct or assignable right against Berger[]Briggs" for a UPA claim. Wilson answers that while the plaintiff in *Williams* had only third-party claims against the insurer, because the claims were assigned to him, Wilson has direct claims against Berger Briggs. As the assignee of the Lodge's claims, Wilson argues, he stands in its shoes and can allege the same UPA claims that the Lodge could have asserted against Berger Briggs. We agree.

**{26}** To begin with the plain language of the statue, we note that the definition of "unfair or deceptive trade practice" makes no mention of transactions between a

claimant and a defendant. *See* § 57-12-2(D). Nor does it require a misrepresentation in the course of a sale between plaintiff and defendant; it merely requires that a misrepresentation be "*made in connection with* the sale . . . of goods." *Id.* (emphasis added). A UPA claimant may also be affected indirectly. *See* § 57-12-2(C). These provisions appear to be crafted so as to ensure that the UPA is applied broadly. *See Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 30, 142 N.M. 437, 166 P.3d 1091. Our holding is also not inconsistent with that in *Williams.* Unlike in *Williams*, Wilson is not a non-consumer third party. Rather, Wilson was assigned the Lodge's UPA claims. As the assignee to the Lodge's claims, Wilson raises claims relating to statements made "in connection with the sale of the insurance." *Williams*, 102 F. Supp. 3d at 1240 (emphasis, internal quotation marks, and citation omitted). For these reasons, and given our prior determination that the assigned claims are commercial in nature, we conclude that Wilson has standing to allege claims under the UPA.[3]

## II.    Berger Briggs' Arguments on Fiduciary Duty and Reasonable Expectation of Coverage or Damages Claims Were Not Decided Upon or Certified By the District Court

**{27}**    Wilson contends that because the district court never decided or certified Berger Briggs' arguments on fiduciary duty or reasonable expectation of damages, those issues are not within the scope of this appeal. Specifically, Wilson argues that the "[d]istrict [c]ourt expressly rejected [Berger Briggs]' request that it certify all issues raised in the [m]otion for [s]ummary [j]udgment when the [district c]ourt rejected their form of [o]rder for [i]nterlocutory [a]ppeal." Rather, "[t]he [d]istrict [c]ourt purposefully elected instead to only certify the issues contained in its July 16, 2019 [o]rder." Berger Briggs argues that its motion for summary judgment and motion for reconsideration "include a request for summary judgment on all of [Wilson]'s claims, including [f]iduciary [d]uty, as they are personal torts, and as such [are] not assignable, no reasonable expectation of coverage and no damages."

**{28}**    We are limited to the questions certified by the district court in its July 16, 2019 order, which relate to whether the Lodge's assignment to Wilson of its claims against Berger Briggs was valid. "Although we are not confined to the particular questions the district court certified for this interlocutory appeal, the scope of our review must be limited to the issues fairly contained in the order." *Curry*, 2014-NMCA-031, ¶ 8; *see Bell v. Estate of Bell*, 2008-NMCA-045, ¶ 9, 143 N.M. 716, 181 P.3d 708 (declining to

---

[3]Given our rulings as to assignability and the existence of a contract between the Lodge and Berger Briggs, we decline to resolve the parties' disagreement as to whether the UCC does or does not demonstrate a public policy in favor of the assignment. Although the district court stated its belief that the UCC favors such assignment, and in doing so cited to NMSA 1978, Section 55-9-109(d)(2) (2001), such is not necessary to our ruling today. We note that the UCC appears to permit the assignment of commercial tort claims. Section 55-9-109(d)(12) expressly prohibits the assignment of "claim[s] arising in tort, *other than a commercial tort claim*." (Emphasis added.) We have held that Wilson's claims fit within the definition of a "commercial tort claim." While the claims assigned to Wilson did not arise in conjunction with his own business or profession, they arose in the course of the Lodge's business, which sought to enter into a new general liability insurance policy and relied on the procurement services provided by Berger Briggs in doing so. We reiterate that, as the assignee to the claims, Wilson stands in the shoes of the Lodge and is permitted to bring validly assigned commercial tort claims.

address an issue that was neither the basis of the district court's order nor specifically certified for interlocutory appeal); *Ellis v. Cigna Prop. & Cas. Cos.*, 2007-NMCA-123, ¶ 14, 142 N.M. 497, 167 P.3d 945 (concluding that the issues raised by the appellant were not certified for interlocutory appeal by the district court); *cf. Armijo v. Wal-Mart Stores, Inc.*, 2007-NMCA-120, ¶ 19, 142 N.M. 557, 168 P.3d 129 (explaining that an appellate court can decide issues other than those certified, where a party raises issues that were not stated in the questions certified, but were not wholly unrelated to the issues identified by the lower court in its order). Because we determine that the issues of reasonable expectation of coverages and damage claims were not certified by the district court and are "wholly unrelated" to the issue of unassignability, *see Armijo*, 2007-NMCA-120, ¶ 19, we decline to decide such issues.

**CONCLUSION**

**{29}** For the foregoing reasons, we affirm the district court's denial of Berger Briggs' motion for summary judgment and remand for proceedings consistent with this opinion.

**{30}   IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**JANE B. YOHALEM, Judge**