This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

No. A-1-CA-40965

**U.S. BANK TRUST NATIONAL ASSOCIATION,
Trustee of the LSF10 MASTER PARTICIPATION
TRUST; and LSF10 MASTER PARTICIPATION
TRUST,**

      Plaintiff-Appellee,

v.

**MARTHA BLOUNT, JOHN D. AINSWORTH,
and REBEKAH A. AINSWORTH,**

      Defendants,

and

**JOHN D. AINSWORTH and REBEKAH A.
AINSWORTH,**

      Third-Party Plaintiffs-Appellants,

v.

**BANK OF AMERICA, N.A.; NATIONSTAR
MORTGAGE, as Successor to SETERUS,
INC.; and CALIBER HOME LOANS, INC.,**

      Third-Party Defendants-Appellees,

and

**PIONEER ABSTRACT & TITLE COMPANY
OF ALAMOGORDO, INC. d/b/a PIONEER
ESCROW SERVICE,**

      Third-Party Defendants.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Ellen R. Jessen, District Court Judge**

Courvoisier Law, LLC
Rebekah A. Scott Courvoisier
Matthew R. Wade
Alamogordo, NM

for Appellants

Snell & Wilmer LLP
Gregory J. Marshall
Albuquerque, NM

for Third-Party Defendants-Appellees Bank of America, N.A.

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Spencer L. Edelman
Bayard Roberts
Albuquerque, NM

Perkins Coie LLP
Aaron R. Goldstein
Los Angeles, CA

Bradley Arant Boult Cummings, LLP
Gabriella E. Alonso
Dallas, TX

for Third-Party Defendant-Appellee Caliber Home Loans, Inc.

Troutman Pepper Hamilton Sanders, LLC
Rachel B. Ommerman
Atlanta, GA

for Third-Party Defendant-Appellee Nationstar Mortgage, LLC

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}**     Appellants John and Rebekah Ainsworth (the Ainsworths) appeal the district court's dismissal of their counterclaims against Appellees Bank of America, N.A. (Bank of America), Nationstar Mortgage (Nationstar), and Caliber Home Loans, Inc. (Caliber) related to a mortgage contract. The Ainsworths argue (1) the district court applied the wrong legal standard in dismissing their counterclaims; (2) the assignment to them of the rights and benefits of the borrower under the mortgage contract was valid; and (3)

there was a genuine issue of material fact regarding their statutory claims. We reverse and remand.

## BACKGROUND

**{2}**     The following facts are taken from LSF10 Master Preparation Trust's (LSF10) second amended complaint for foreclosure and the Ainsworths' first amended answer, counterclaim, cross-claim, and third-party complaint. Robert Blount signed a mortgage contract (the Mortgage Agreement) on July 2, 2003 to America's Wholesale Lender secured by a promissory note (the note) for a loan of $79,800, for a home in Cloudcroft, New Mexico (the property). The note and Mortgage Agreement themselves were assigned to different parties multiple times between 2003 and during the pendency of this litigation.

**{3}**     In October 2009, the Ainsworths entered into a real estate contract with Robert for the purchase price of $125,000 for the property. The Ainsworths made a $20,000 down payment and agreed to pay the remainder of the purchase price in 150 monthly payments of about $1,000 each. The real estate contract with the Ainsworths did not purport to assign loan rights or obligations to the Ainsworths or establish the assumption of the loan itself. Instead, it established an escrow account with Pioneer Abstract & Title Company of Alamogordo (Pioneer) into which the Ainsworths deposited their monthly payments to facilitate their obligation under the real estate contract and from which the escrow holder made monthly payments required of Robert on the note and the Mortgage Agreement.

**{4}**     Robert died in December 2011. Martha Blount—Robert's wife who was not a party to the Mortgage Agreement, the note, or the ensuing real estate contract—filed a probate action in Dallas, Texas and was issued letters testamentary as the executor of the estate of Robert in September 2015. The Ainsworths allege that the various holders of the note and servicers of the Mortgage Agreement improperly handled the mechanics of the loan—particularly the payments paid by the Ainsworths via Pioneer—over several years following Robert's death. Ultimately, the failure to process the payments, or the rejection thereof, by the mortgage servicers left the loan in default by August 2015. In time, the Federal National Mortgage Association (Fannie Mae)—a plaintiff with uncontested standing as the party to whom the Mortgage Agreement had been assigned in January 2017—filed this foreclosure action in October 2017. The complaint was twice amended, eventually including the Ainsworths as defendants who then filed an original answer, counterclaim, and third-party claim against several parties. In February 2020, the district court granted LSF10's—by then the plaintiff and holder of the note—and Caliber's motions to dismiss the Ainsworth's counterclaim and third-party claims.

**{5}**     In May 2022, the district court granted the Ainsworths' motion for leave to file amended pleadings based on the fact that Martha, individually and as successor in interest and/or heir to Robert, and/or the estate of Robert, assigned "all rights, titles, interests, claims, and causes of action belonging or accruing to Robert . . . , the Estate

of Robert . . . , and Martha . . . in and to [the n]ote, and [the] Mortgage [Agreement], or arising from, incident to, or related to [the n]ote and [the] Mortgage [Agreement], to [the Ainsworths]." The Ainsworths filed their first amended answer, counterclaims, cross-claims, and third-party complaint against Bank of America, Nationstar, Caliber, and others, for, in relevant part, violations of the New Mexico Unfair Trade Practices Act (the UPA), the Real Estate Settlement Procedures Act (RESPA), which is a federal cause of action, and the New Mexico Home Loan Protection Act (the NMHLPA).

{6}     Bank of America and Caliber filed motions to dismiss and Nationstar filed a motion for judgment on the pleadings. After full briefing and hearings on each motion, the district court granted the motions in a single order.

{7}     We note initially that the district court's order refers to "Blount" as a party without distinguishing between Robert, Martha, or Robert's estate. In any event, the order stated that the Mortgage Agreement and the note "constitute a contract between the Plaintiff and Blount" that required interpretation. Reviewing Section 13 of the Mortgage Agreement, the district court determined that "[i]n this case, the Mortgage [Agreement] unambiguously dictates the terms and conditions of any assignment thereunder, and it does not provide for an assignment to anyone separate and apart from assuming the obligations of the borrowers." It concluded that because the Ainsworths did not properly assume the Mortgage Agreement, which could not be done unilaterally, they "did not gain 'the rights, titles, interests, claims, and causes of action belonging to . . . Blount' under which they bring their third[-]party claims." The district court went on to broadly determine that the Ainsworths, without the valid assignment of specific rights associated with the property and the Mortgage Agreement thereon, lacked standing for any of their claims under the UPA, RESPA, or the NMHLPA. The Ainsworths appeal.

## DISCUSSION

{8}     The district court's dismissal order challenged on appeal resolved two motions to dismiss and a motion for judgment on the pleadings. The Ainsworths argue that the district court employed the wrong legal standard in resolving the motions and that this Court should review the Ainsworths' claims pursuant to the summary judgment standard of review because they attached exhibits to their responses to the motions. Though we agree that motions to dismiss are treated as summary judgment motions when the district court considers matters outside of the complaint, such is not the case where the district court does not base its review on such material even if presented to it. *See Delfino v. Griffo*, 2011-NMSC-015, ¶¶ 10, 11, 150 N.M. 97, 257 P.3d 917 (determining that the district court did not rely on matters outside of the pleading in granting the motion to dismiss and reviewing the order as a motion to dismiss). This latter circumstance is the case here. Given the district court relied on only the pleadings and the exhibits attached thereto to make its conclusion, we review this matter as a motion for judgment on the pleadings.

{9}     "We review judgments on the pleadings made pursuant to Rule 1-012(C) NMRA according to the same standard as motions for failure to state a claim under Rule 1-

012(B)(6)." *Vill. of Angel Fire v. Bd. of Cnty. Comm'rs*, 2010-NMCA-038, ¶ 5, 148 N.M. 804, 242 P.3d 371. "In reviewing a district court's decision to dismiss for failure to state a claim, we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." *Delfino*, 2011-NMSC-015, ¶ 9 (internal quotation marks and citation omitted). "Dismissal . . . is appropriate only if the plaintiff is not entitled to recover under any theory of the facts alleged in their complaint." *Id.* ¶ 12 (alteration, internal quotation marks, and citation omitted). We review the district court's ruling de novo. *See id.* ¶ 9.

**{10}** We begin by addressing the issue that underpins the central holding of the district court: Whether the language of the Mortgage Agreement as to the assignability of rights thereunder extends some or all of Robert's or Martha's[1] ancillary rights related to the property or the Mortgage Agreement thereon to the Ainsworths. To the extent the contract itself governs this determination in whole or in part, "[c]ontract interpretation is a matter of law that we review de novo." *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803; *id.* ("The purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." (internal quotation marks and citation omitted)).

**{11}** Bank of America, Nationstar, and Caliber all agree with the district court that the Mortgage Agreement—through negative implication—permits assignment of rights and obligations of the Mortgage Agreement only if the assumption is in writing and approved by the lender.

**{12}** Section 13 of the Mortgage Agreement states:

> Subject to the provisions of Section 18, [providing that the lender may require payment in full if property is sold without the lender's permission,] any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements

---

[1]Nationstar, Caliber, and Bank of America additionally argue that Martha could not assign the rights, only Robert could as the borrower and the person who signed the Mortgage Agreement and the note. The district court did not rule on this and the Ainsworths respond that this argument was not presented to the district court, so they would be prejudiced if we addressed the argument. On the merits, the Ainsworths pleaded that "on or about September of 2015, Martha Blount opened a probate in Dallas County, Texas, and was issued Letters Testamentary as Executor of the Estate of Robert Blount on September 8, 2015." Further, they pleaded that "Martha Blount, individually and as successor in interest and/or heir to Robert Blount and/or the estate of Robert Blount" made the assignment to the Ainsworths. As a matter of law, the Ainsworths' plead that Martha had the right to make the assignment in her capacity as the executor of Robert's estate. *See Rist v. Design Ctr. at Floor Concepts*, 2013-NMCA-109, ¶ 21, 314 P.3d 681 (stating that under our notice pleading standard a plaintiff is only required to state general allegations of conduct in a complaint as long as those allegations are detailed enough to give the parties and the court a fair idea of the plaintiff's complaint and the relief requested).

of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

We too agree that the plain language of Section 13 states that the Ainsworths could assume the borrower's obligations and obtain the borrower's rights and benefits—as was here practically, if not expressly, established by the real estate contract—under the Mortgage Agreement in writing and with the express written permission of the lender. Neither Section 13 requirement, however, was met given that the real estate contract did not purport to assign rights and obligations under the Mortgage Agreement itself from Robert to the Ainsworths nor was permission for such sought or granted. Alleging neither such circumstance in their amended complaint, the plain language of Section 13 is not satisfied.

**{13}** To reiterate, the real estate contract at issue does not itself purport to assign rights and benefits derived from the Mortgage Agreement from Robert, who was a signatory to both documents, to the Ainsworths. Consistent with this, the Ainsworths' arguments on this topic seem to be rooted in the fact that the common law permits assignments of mortgages. They contend, with scant analysis or support, that the mere fact that the clause of the Mortgage Agreement at issue "does not contain an explicit prohibition on a borrower's assignment and New Mexico law makes clear that none will be implied" somehow overcomes the express limitation to such assignability. More specific to Section 13, the Ainsworths note that the Mortgage Agreement permits the lender to accelerate the note, contending such a right demonstrates that the borrower's rights could be assigned. We are not persuaded. The Ainsworths do not explain how a lack of explicit prohibition separate and apart from the conditions on the right to assignment laid out in Section 13 alters the analysis at hand. While we agree that Section 13 does not contain a blanket prohibition on a borrower's assignment, it nonetheless plainly prohibits assignment without written approval by the lender.

**{14}** The Ainsworths next claim that Section 13 was adopted in the standard Fannie Mae mortgage form to address circumstances where courts held former mortgages permitted assumption of duties without the lender's consent. Whether this history is accurate does not change the fact that the plain language of Section 13 requires lender approval of assignment and assumption of rights and duties of the Mortgage Agreement. The Ainsworths go on to argue the legality of explicit prohibition of assignments and whether the statutory claims they made are assignable, which are not issues that affect our analysis regarding the plain language of Section 13 or whether the Mortgage Agreement itself, along with its rights and liabilities, can be assigned absent lender approval in writing.

**{15}** Despite our agreement with the district court regarding the lender approval requirements in the Mortgage Agreement, we observe that the limitation on assignability is for "all of Borrower's rights and benefits *under this Security Instrument*." We perceive this language to govern assignability of claims directly arising under the Mortgage Agreement and to place preconditions on such circumstances. Based on this limitation in the contract, the next question is whether the Ainsworths' statutory claims arise under

the "*Security Instrument*" that is the Mortgage Agreement; if they do not, then the Mortgage Agreement does not preclude assignment of those claims.

**{16}** The Ainsworths argue that *Wilson v. Berger Briggs Real Estate & Insurance, Inc.*, 2021-NMCA-054, 497 P.3d 654, supplies assignability of their UPA claims separate and apart from the Mortgage Agreement. We understand the Ainsworths to argue that Section 13 does not govern their statutory UPA claims as set forth in the amended complaint. Indeed, we observe such claims to be separate species of causes of action from contract-related claims that derive from the Mortgage Agreement and the rights and obligations associated therewith. *See Gandydancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶¶ 24, 29, 453 P.3d 434 (noting "[t]he Legislature intended the UPA to serve as remedial legislation for consumer protection," and "New Mexico cases have historically interpreted the UPA to focus exclusively on consumer protection, protecting innocent consumers" (internal quotation marks and citations omitted)); *Wilson*, 2021-NMCA-054, ¶ 23 (noting the UPA's "fundamental purpose is to protect consumers from unscrupulous business practices regardless of whether those consumers are directly or indirectly affected"). *Wilson* establishes the assignability of UPA claims that are commercial in nature independently from causes of action directly deriving from an underlying agreement between the parties. 2021-NMCA-054, ¶¶ 22-26

**{17}** This distinction as set forth in *Wilson* is straightforward. Yet here the district court relied exclusively on Section 13 to dismiss the entirety of the Ainsworths' amended counterclaims, failing to independently assess each of the statutory causes of action pleaded by the Ainsworths, as required by *Wilson.* By concluding that Section 13 resolved not only claims by the Ainsworths as successor mortgagees or assignees of contract rights, but also any statutory causes of action accruing to Robert or his estate, the district court did not separately consider the elements of each statutory cause of action—the UPA, RESPA, and NMHLPA claims—and did not ascertain independently for each claim whether Section 13 had total, some, or no application to such claims.

**{18}** It would be imprudent for this Court to do so on the first instance on appeal, and therefore, we remand to the district court to assess whether the statutory claims are feasible "under the Security Instrument," and, if not, whether the Ainsworths state a claim for which relief can be granted. *See Green v. Gen. Accident Ins. Co. of Am.*, 1987-NMSC-111, ¶ 22, 106 N.M. 523, 746 P.2d 152 ("Where the ends of justice require, this Court may remand a case to district court for the making of proper findings of fact.").

**CONCLUSION**

**{19}** We reverse and remand for proceedings consistent with this opinion.

**{20} IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**JANE B. YOHALEM, Judge**